[No. 20764.   Department Two. — April 18, 1891.]

## THE PEOPLE, RESPONDENT, v. JAMES E. DEEGAN, APPELLANT.

CRIMINAL LAW — LARCENY — EVIDENCE — CROSS-EXAMINATION — CONVERSATION WITH DEFENDANT. — Upon the trial of a defendant charged with larceny, a witness for the prosecution who had merely testified that he saw the defendant on the night of the alleged stealing, but had not testified in chief as to having any conversation with him, cannot be cross-examined in relation to such conversation, nor can the defendant introduce such conversation in evidence in his own behalf.

ID. — NEW TRIAL — MISCONDUCT OF JURY — AFFIDAVIT OF JUROR — An affidavit of a juror seeking to impeach the verdict for his own misconduct is not admissible, and cannot be used upon a motion for a new trial.

ID. — INTOXICATION OF JUROR. — The fact that a juror drank intoxicating liquors out of court, and that at the recess on the day the verdict was rendered he was for a time under its influence, does not vitiate the verdict, if it appears from the affidavits of other jurors and the officer in charge of the jury that the juror, while sitting or deliberating as a juror, was sober, intelligent, and in a fit condition to understand and deliberate upon the evidence, and determine the verdict.

ID. — INTOXICATION IN COURT. — If a juror is palpably intoxicated in court, the defendant should object to his serving, before the jury is permitted to retire.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion.

*Hinds & Merriam*, and *A. J. Burns*, for Appellant.

The court erred in denying defendant's motion for a new trial on the ground that during the progress of the trial one of the jurors drank an excessive amount of liquor, and was in fact intoxicated. (*Wilson* v. *Abrahams*, 1 Hill, 207; *Ryan* v. *Harrow*, 27 Iowa, 494; 1 Am. Rep. 302; *People* v. *Gray*, 61 Cal. 164; 44 Am. Rep. 549; *People* v. *Lee Chuck*, 78 Cal. 318; *Ipswitch* v. *Fernandez*, 84 Cal. 639.)

*Attorney-General Hart, W. D. Tupper*, and *H. H. Welsh*, for Respondent.

The affidavit of the juror was inadmissible to impeach his own verdict. (*Clark* v. *Creditors*, 57 Cal. 639.)   The

affidavits of jurors are admissible to support a verdict when attacked for misconduct. (*People* v. *Hunt*, 59 Cal. 430; *People* v. *Thornton*, 74 Cal. 488.) Even if the juror was intoxicated, defendant proceeded with the trial without objection, and cannot avail himself of it for the first time, after defeat. (*Ipswitch* v. *Fernandez*, 84 Cal. 641.) The drinking of spirituous liquors by jurors ought not of itself to overturn the verdict, unless there is reason to suspect that it may have influenced the final result. (2 Graham and Waterman on New Trials, 561, 564, and cases cited; *State* v. *Caulfield*, 23 La. Ann. 148; *Davis* v. *People*, 19 Ill. 74; *Roman* v. *State*, 41 Wis. 312; *Kee* v. *State*, 28 Ark. 155; *Russell* v. *State*, 53 Miss. 382; *Thompson* v. *Commonwealth*, 8 Gratt. 637; *Pope* v. *State*, 36 Miss. 121–136; 1 Bishop on Crim. Procedure, sec. 999; Dissenting opinion of Justices Beatty and McFarland in *People* v. *Lee Chuck*, 78 Cal. 339.)

FOOTE, C.—The defendant was convicted by a jury, of the crime of larceny,—the theft of a calf. From the judgment rendered in the premises, and an order denying him a new trial, he appeals.

The evidence upon which he was tried is mainly circumstantial, but we see no reason to declare, as the defendant contends we should, that the jury were not warranted in returning the verdict of guilty.

In the progress of the trial, a witness for the prosecution, Mr. Zeilor, testified that he saw the defendant and those claimed to have been with him, on the night of the alleged stealing, at Selma, in Fresno County, between eight and nine o'clock in the evening. Then, upon cross-examination by defendant's counsel, the witness said he had no conversation with them. When his memory was refreshed by a further question, he was about to state what he had said to them, and presumably what they said to him, when the district attorney

objected on the ground that the testimony sought to be elicited was not in cross-examination of anything brought out by him in his examination in chief.

The court sustained the objection, and the defendant excepted, and assigns this ruling of the court as prejudicial error.

If the people, for the purpose of criminating the defendant, had asked for this conversation, it would have been admissible, and then the defendant could have cross-examined the witness in relation to the matter. This was not done, and as the defendant's conversations could not be introduced by him in chief, for the reason that it is not permissible for a man charged with crime thus beforehand to manufacture evidence for himself, so it could not be admissible in cross-examination if brought out by the defendant for the first time. Besides, what appears to have been said, and which it was the evident purpose of defendant's counsel to bring before the jury, is testified to by defendant afterwards. So that no prejudicial error was committed as to the matter.

The last and most important ground upon which the appellant bases his contention for a reversal of the judgment and order is, that one of the jurors was guilty of the misconduct of drinking intoxicating liquors during the progress of the trial, and to such an extent as to disqualify him for the performance of his duty in such capacity.

The affidavit of the juror himself, seeking to impeach his verdict, is not admissible. (*People* v. *Gray,* 61 Cal. 183; 44 Am. Rep. 549.)

There were other affidavits introduced on the part of the defendant, which went to show that during the recess of the court, from twelve to two o'clock on the day when the verdict was rendered, that the juror in question was intoxicated in a saloon in Fresno; that he had been during that week under the influence of intoxicating

liquors, and that on the day of the verdict, during recess
of court, as heretofore stated, he came home greatly under
the influence of such liquor, stupid and irrational; that
he went to sleep, and was awakened by the deputy sheriff
and taken back to court in a condition not fitting him
for the service of a juror; that he drank a tumblerful
of whisky, and was intoxicated during that recess above
mentioned; that the juror was drunk in a saloon, be-
tween the hours of twelve and two on the day in ques-
tion.

There is no doubt of the fact that the juror drank the
intoxicating liquor during the recess.   But the affidavits
for the people, mainly by the fellow-jurors of the one
charged with misconduct sufficient to vitiate the verdict,
is to the effect that at no time during the trial did they
perceive that the juror was intoxicated in any degree,
but that, on the contrary, he was sober, intelligent, and
perfectly able to consider evidence and exercise judg-
ment in deliberating thereon, and that on the day of the
rendition of the verdict, after they had retired to con-
sider it, the juror, Wade, discussed in a reasonable and
sensible way the different facts as shown by the testi-
mony in the case, and in every way indicated that he
was thoroughly able and in a condition to perform his
duty as a juror.

The affidavit of Deputy Sheriff Pickett shows that he
saw the juror Wade come into the court-house where
the trial was had, with George Z. Moore, another deputy
sheriff, at half-past two o'clock of the day of the verdict;
that he has known the juror for about twenty years;
that he particularly observed him from that time until
about five o'clock, P. M., while on the jury, and that there
was nothing in his appearance and actions to indicate
intoxication; that he was placed in charge of the jury
at five, P. M., and remained in charge of them until
about 5:30, P. M., until they arrived at a verdict, when he
returned with them to the court-room; that he met the

juror in question about fifteen minutes after the verdict had been returned, and had a conversation with him, and that he then appeared thoroughly sober.

Deputy Sheriff Moore swore that during all the days of this trial, — 18th, 19th, and 20th of June, 1890, — he was in the court-room, and observed the juror Wade; that he appeared to be thoroughly sober and intelligent, and in a condition to perform his duties as juror; that he has known Wade personally about ten years; that on the 20th of June, 1890, at about 2:15 o'clock, P. M., he went to Wade's house, and entering it saw Mrs. Hill, and asked where Wade was, to which she replied: " There he is; just wake him up "; that he did wake him, and that they proceeded to the court-house, a distance of a quarter of a mile, together; that during that walk he talked with Wade, and he was sober and intelligent, and did not appear in any way under the influence of intoxicating liquors; that they reached the court-house about 2:30 o'clock, P. M.; that he remained there in the court-room some time before the case was submitted to the jury, and observed no action or appearance on the part of Wade indicating that he was drunk or intoxicated.

It thus appears that the court was justified in believing that while sitting as a juror in the box, or considering the verdict, Wade was sober, intelligent, and in a fit condition to understand and deliberate upon the evidence, apply the instructions of the court, and form and express a fair opinion as to what the verdict should be.

There is no doubt that he did drink intoxicating liquors out of court, and that at the recess, at least, he was for a time under its influence. The question then is, whether, as a matter of law, the verdict in which he concurred, and which he assisted in making, was vitiated by his drinking, and its effect upon him outside of the court, when not sitting as a juror?

We cannot say that it was. If, while in his capacity of juror, he was sober, heard the evidence, understood

and appreciated it and the instructions of the court and argument of counsel, and was then able intelligently to understand, deliberate, and determine what should be the verdict, with his fellow-jurors, we are unable to perceive that the verdict was arrived at accompanied by misconduct on the part of the juror while performing his duty.  He was guilty of drinking more than he ought, when out of court, but does not seem ever to have been under its influence while sitting or deliberating as a juror.  At those times his mind was clear, and no misconduct is shown to have occurred.

We do not think that there is anything opposed to this in the cases of *People* v. *Gray*, 61 Cal. 164, 44 Am. Rep. 549, or *People* v. *Lee Chuck*, 78 Cal. 318.

If, as the defendant seems to think, the juror was palpably intoxicated in court, and he or his counsel perceived it, objection should have been made before the jury was permitted to retire.  (*Ipswitch* v. *Fernandez*, 84 Cal. 639.)  But, as we have seen, the trial judge was justified, under all the evidence before him, in believing the juror sober during the performance of his duty as a juror on the trial, and while deliberating upon the verdict.

For these reasons, we advise that the judgment and order be affirmed.

VANCLIEF, C., and FITZGERALD, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

DE HAVEN, J., concurring.—I concur in the judgment. The affidavits as to the condition of the juror Wade, on the afternoon when the case was submitted to the jury for decision, were conflicting, and the judge who presided at the trial, and must have personally observed the juror at the time referred to, was in a far better position than we to determine the truth of the matter; and that he did not believe the juror to have been under the

influence of liquor, as charged, is implied from the order denying appellant's motion for a new trial.

I do not, however, give my assent to that part of the foregoing opinion which seems to intimate that if the juror was in the condition claimed by defendant, the objection now urged was waived because not made before the retirement of the jury. Whatever may be the rule in civil cases, in which it may be said, in a general sense, only the parties thereto are interested in the verdict, the principle of waiver of the right to object to misconduct which disqualifies a juror for the performance of his duties as such, has no application to a criminal trial for a felony. In such a case the constitution guarantees to a defendant the right to a trial by twelve competent jurors, and his express consent to be tried by a less number will not bind him. (*People* v. *O'Neil,* 48 Cal. 257.) And there must be this number of competent jurors throughout the trial. The people of the state, equally with the defendant, are interested in having this constitutional right secured in every case, and it is of infinitely more importance to the people than to the defendant that no conviction for a grave offense shall be had, except as the result of a trial which commands the respect of those who witness it, or are informed of the manner in which it is conducted.

No juror is, in judgment of law, competent to sit during the trial who is not in a condition to intelligently receive the evidence, the argument of counsel, and the charge of the court; and while it may be true that intoxication does not affect all men alike,—some retaining their judgment and ability to weigh and deliberate upon the effect of evidence, and to understand an argument, or the instructions of the court,—still, the law takes no account of these exceptions, and holds no person competent to sit as a juror while in a state of intoxication. And I am of the opinion that if a juror is in court intoxicated to such a degree as to be plainly noticeable,

the defendant is not required to bring himself into antagonism with such juror by entering any formal protest or objection to proceeding with the trial while the juror is in such condition. This would present a case affecting not only a substantial right of the defendant, but also the dignity and decorum of the court itself, and should be disposed of by the court of its own motion, and that, too, so as to preserve the rights of the defendant.