[Crim. No. 111.    Third Appellate District.—January 22, 1910.]

## THE PEOPLE, Respondent, v. CHARLES ROMERO, Appellant.

CRIMINAL LAW—GRAND LARCENY—STEALING SUCKING CALF—EVIDENCE OF OWNERSHIP OF COW AND CALF—UNRECORDED BRANDS ON COW—DISTRESS OF COW.—Upon a prosecution for grand larceny committed in the stealing of a sucking calf, unrecorded marks and brands upon the cow, which was mother of the calf, shown to belong to the prosecuting witness, were admissible, in connection with other evidence identifying the cow; and the distress and bellowing of the cow when the calf was taken from her and killed by the defendant, was evidence tending to show that the cow was mother of the calf so stolen and killed.

ID.—SUPPORT OF VERDICT.—It is held that the evidence was sufficient to support the verdict of conviction of the defendant of the crime charged.

ID.—CROSS-EXAMINATION OF DEFENDANT — PROPER QUESTION — WITH-
DRAWAL NOT PREJUDICIAL.—Where the defendant testified in chief
that he had stolen no calf, and that the calf he had killed was his
own, it was proper for the district attorney to ask him upon cross-
examination whether, after he was arrested on charge of stealing
the calf from the prosecuting witness, he did not request that one to
whom he applied to go on his bond should tell his brother not to
be too hard on him, and where such question was withdrawn before
it was answered, the asking and withdrawal thereof could not be
prejudicial to the defendant.

ID.—MISCONDUCT OF JUROR—DRINKING LIQUORS TO EXCESS DURING RE-
CESS—CONFLICTING AFFIDAVITS—SOBRIETY DURING TRIAL AND VER-
DICT—PROVINCE OF JUDGE.—Where affidavits for defendant stated
that a juror charged with misconduct drank intoxicating liquors to
excess during recess of the court, and the conflicting affidavits of
his fellow-jurors stated that he was sober during the trial and de-
liberation upon the verdict, and that he was at all times able to
consider the evidence adduced, and intelligently to exercise his judg-
ment thereon, it was the province of the trial judge, who was best
able to determine the condition of the juror during the trial, to de-
cide the question of fact upon the conflicting evidence, and his
decision in support of the verdict will be affirmed.

APPEAL from a judgment of the Superior Court of Mo-
doc County, and from an order denying a new trial. Chas.
M. Head, Judge Presiding.

The facts are stated in the opinion of the court.

James H. Stewart, and James Wylie, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for
Respondent.

CHIPMAN, P. J.—The defendant was convicted of the
crime of grand larceny. He appeals from the judgment on
the verdict and from the order denying his motion for a
new trial. He claims that the evidence was insufficient to
establish his guilt, his contention being based principally
upon the fact that the evidence was circumstantial. The
larceny charged was the felonious taking of a sucking calf
about eight months old. The criticism of the evidence is
addressed to two facts—first, that proof of the ownership
of the mother of the calf depended upon the marks and
brands upon the cow which had not been recorded as re-

quired by the statute, and, second, the circumstance that while the defendant was killing and dressing the calf the cow stood in the road bellowing and apparently showing much distress at the loss of her young, and when driven away broke from the pasture where she had been placed and returned the next morning and resumed her demonstrations of grief.

It seems to have been the theory of defendant's counsel that the marks and brands found on the cow were no evidence of ownership, because they had not been recorded. In *People* v. *Bolanger,* 71 Cal. 17, [11 Pac. 799], it was held that an unrecorded mark is some evidence of ownership. But they were referred to by the witnesses as one of the means of identifying the animal as well as tending to show ownership. The marks and brands were shown to belong to the prosecuting witness, who claimed the ownership of the cow, and there was evidence tending to prove ownership other than by these marks and brands as means of identification.

Ownership of the calf did not wholly depend upon the evidence given by the mother, to which no objection was offered, although the witnesses seem to have attached some importance to her demonstrations in confirming them in their belief, otherwise formed, that the calf killed by defendant belonged to his neighbor, Van Loan. We think there was sufficient evidence to support the verdict.

The defendant was a witness in his own behalf. After the defendant had rested the court permitted him to be recalled for further cross-examination by the district attorney. The following proceedings occurred:

"By Mr. Jamison: Q. Did you have any conversation with Wade Williams, here in Alturas, Modoc county, California, on Main street of said town, or near the bridge over Pitt river, at which conversation only yourself and Wade Williams was present and within hearing of it, in the latter part of October, 1906, just after you had been arrested for grand larceny on the charge of stealing a calf belonging to E. Van Loan, in which conversation, after asking Wade Williams to go your bond, you said to him 'Tell old Charlie'—meaning the older brother of Wade Williams—'not to be too hard on me,' or words in substance and to that effect?

"Mr. Wylie: We object to that question on the ground that it is irrelevant, incompetent and immaterial; this is his own witness, and he cannot impeach his own witness.

"The Court: I understood that he was recalled on cross-examination, for further cross-examination.

"Mr. Wylie: We were through with him, he was examined in chief by us, then cross-examined, and we had closed our case and rested, he is not our witness now; we were through with him when we closed our case.

" (Argument by respective counsel.)

"The Court: The rule is very strict against compelling a defendant to be a witness against himself, and it is about adjourning time; I will think this matter over until to-morrow morning. (Court gives usual admonition to jury.)

"Court now takes a recess until to-morrow morning at half-past 9 o'clock.

"Court is called to order Thursday, April 15, 1909, Judge Head presiding. Present the defendant and his counsel; also the district attorney, jury and officers of court.

"Charles Romero, the defendant, is on the witness-stand for further cross-examination.

"Mr. Jamison: I will say this since last evening I have examined into the question that the gentlemen raised on the other side, that in any circumstances we would not have the right to ask the defendant the question propounded; and I am not satisfied that I am right in insisting that I ask the question. I will withdraw the question.

"The Court: Very well; Mr. Romero, you are excused from the witness-stand.

"Mr. Jamison: That is all; the people rest."

The supreme court held, in *People* v. *Arrighini,* 122 Cal. 121, 128, [54 Pac. 591, 593], that a defendant in a criminal case "cannot be cross-examined as to other matters (i. e., matters as to which he had not testified in chief), for the purpose of discrediting him by an attack upon his character." Nor could the defendant in this manner be compelled to testify against himself. It appears from the record, however, that the defendant had testified in chief that the calf belonged to him and in effect that he had not stolen it, for he testified that he "had stolen nothing." Having so testified, we think the question was a proper one. In any case,

we think it quite clear that the jury were not influenced to defendant's prejudice by what took place.

Misconduct of a juryman is urged as ground for a new trial, the claim being that he indulged too freely in intoxicating drinks during the trial. There were some depositions submitted in support of this ground urged for a new trial, that when not on duty as a juryman, Hayes did drink to excess, but several jurymen deposed that at no time during the proceedings while evidence was being taken or when the jury retired to consider their verdict was Hayes intoxicated, but, on the contrary, he was "sober during the trial, and in all ways perfectly able to consider the evidence introduced at the trial of said cause and to intelligently exercise his judgment thereon." The trial judge occupies such relation to the trial before him as to be best able to judge of the actual condition of the juryman where the evidence is conflicting upon that point. (*People* v. *Sullivan,* 129 Cal. 557, [62 Pac. 101].) The fact that a juror drank intoxicating liquor during recess of the court will not vitiate the verdict if it appears from the affidavits of his fellow-jurymen, as here, "that the juror, while sitting or deliberating as a juror, was sober, intelligent and in a fit condition to understand and deliberate upon the evidence and determine the verdict." (*People* v. *Deegan,* 88 Cal. 602, [26 Pac. 500].)

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.