[Crim. No. 243. Third Appellate District.—May 29, 1914.]

## THE PEOPLE, Respondent, v. JOHN WILLIAMS, Appellant.

CRIMINAL LAW—RAPE—FEMALE UNDER AGE OF CONSENT—FAILURE TO MAKE OUTCRY AS RAISING PRESUMPTION OF NONCOMMISSION OF CRIME—INSTRUCTION.—In a prosecution for rape upon a girl under sixteen years of age an instruction that "if the jury believe from the evidence that at the time of the alleged rape other people were at the same time in the same house, who might have easily heard her had she made any outcry, and that she in fact made no outcry at the time the defendant was attempting to have connection with her, these facts will tend to raise a presumption that no rape was committed upon her at the time," is properly refused, under the rule that courts are forbidden to charge the jury "with respect to matters of fact."

ID.—CONSENT OF PROSECUTRIX—FAILURE TO MAKE OUTCRY.—It is immaterial whether the prosecuting witness consented or was forced to submit; and her failure to make any outcry furnishes no presumption that a rape was not committed.

ID.—UNCORROBORATED TESTIMONY OF PROSECUTRIX—REFUSAL OF INSTRUCTION.—The refusal of the court in such prosecution to comply with the defendant's request to instruct the jury that if the prosecution relies upon the uncorroborated testimony of the prosecutrix, unsustained by other evidence, or by facts and circumstances corroborating it, they should view such testimony with great caution, and that in considering her testimony they may take into consideration the facts and circumstances surrounding the place where the alleged offense was committed, and all the facts and circumstances at that time and immediately thereafter, is not prejudicial error, if by instructions which the court gives the defendant has the benefit, substantially, of all he asked in the refused instruction.

ID.—AMENDMENT OF PENAL CODE CHANGING AGE OF CONSENT AND PUNISHMENT FOR RAPE.—If at the time of the commission of the alleged crime section 261 of the Penal Code defining rape, and section 264 prescribing the punishment for that offense, were in force, the subsequent amendment of these sections (Stats. 1913, p. 212) did not bar prosecution for the crime.

ID.—EXAMINATION OF THE WITNESS—MISCONDUCT OF DISTRICT ATTORNEY.—The asking by the district attorney of a question of a witness in rebuttal which properly should have been asked as part of the people's case in the examination of the witness in chief, which question is not answered, is not prejudicial to the defendant.

ID.—MISCONDUCT OF JUROR—CONFLICTING AFFIDAVITS.—Where the intoxication of a juror is urged as ground for a new trial, and the affidavits respecting his alleged intoxication are conflicting, the matter is removed from consideration on appeal.

ID.—KNOWLEDGE OF INTOXICATION OF JUROR—FAILURE TO MAKE OBJECTION—WAIVER.—If the defendant has knowledge of the intoxication of a juror during the trial and makes no objection thereto, he cannot thereafter, in case of an unfavorable verdict, take advantage of such misconduct on appeal.

APPEAL from a judgment of the Superior Court of Siskiyou County and from an order refusing a new trial. James F. Lodge, Judge.

The facts are stated in the opinion of the court.

B. K. Collier, and Shinn & Shinn, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of the crime of rape upon a girl under the age of sixteen years and was sentenced to imprisonment for the term of five years. He appeals from the judgment and from the order denying his motion for a new trial.

It is not contended that the evidence is insufficient to support the verdict. Briefly, the evidence was that defendant, with numerous other persons, including the prosecuting witness and her mother, attended a ball on New Year's eve, 1913; that the party broke up about three o'clock January 1st and defendant walked part of the way from the place where the ball was conducted with the prosecuting witness and her mother toward her home; that the mother left the daughter and defendant at the gate of a neighbor's premises and went on to her residence; that defendant and the prosecuting witness were at this neighbor's house alone some little time during which they sat on the porch of the premises where the alleged crime was committed. A family was living in this house but whether any of its members were awake at that early hour of the morning does not appear.

1. The following instruction offered by defendant was refused and the ruling is alleged as error especially, as is claimed, in view of the testimony of the prosecuting witness that de-

fendant used some physical force in accomplishing his object. She testified also that he overcame her by having first aroused her passions which deprived her of the power of resistance. She also testified that she made no outcry and did not until some time later inform her mother of the assault. The instruction is as follows: "If the jury believe, from the evidence, that at the time of the alleged rape other people were at the same time in the same house, who might easily have heard her had she made any outcry, and that she in fact made no outcry at the time the defendant was attempting to have connection with her—these facts will tend to raise a presumption that no rape was committed upon her at the time."

Defendant cites *People* v. *Howard,* 143 Cal. 316, [76 Pac. 1116], where it is claimed a somewhat similar instruction was refused. The decision was in Bank. The instruction was not commented upon in the main opinion but, in a concurring opinion by the Chief Justice, speaking of one part, he said: "The instruction contains a proposition which might very well have been given to the jury if it had been clearly stated by itself." That is, the failure to make outcry might be considered "with all the other evidence in determining the credibility of such witness and whether rape was in fact committed or not." The instruction refused in the present case was addressed to the fact that she made no outcry when there were persons in the house "who might easily have heard her had she made an outcry," which, it is claimed, would "tend to raise a presumption that no rape was committed upon her at the time." The difference between the two instructions is obvious. A presumption is evidence and may outweigh the positive evidence of witnesses against it. (Code Civ. Proc., sec. 2061, subd. 2; *People* v. *Milner,* 122 Cal. 171, 179, [54 Pac. 833] ; *Estes* v. *Ballard,* 22 Cal. App. 344, 349, [134 Pac. 361].) To say that certain facts raise a presumption that no rape was committed is equivalent to saying that the facts constitute evidence that no rape was committed. But the court is forbidden to charge the jury "with respect to matters of fact." (Const. art., VI, sec. 19.)

The law is well settled that it is immaterial whether the prosecuting witness consented or was forced to submit. Her failure to make any outcry furnished no presumption that a rape was not committed.

2. The following instruction asked by defendant was re-
fused: "In this case the prosecution relies for a conviction
upon the testimony of Belle Dollarhide, the prosecuting wit-
ness, and no other witnesses were called by the prosecution
to testify directly to the time and place or circumstances of
the alleged offense; and you are instructed, in cases where
the prosecution relies upon the uncorroborated testimony of
the prosecutrix, unsustained by other evidence, or by facts
and circumstances corroborating it, that you should view such
testimony with great caution.

"You are further instructed that in considering her testi-
mony you may take into consideration the facts and circum-
stances surrounding the place where the alleged offense is
charged to have been committed. All the facts and circum-
stances at the time and immediately after the alleged offense
was committed, in determining the weight of her testimony,
and the reasonableness thereof, as tending to show to your
minds the credit to be given to the same."

The court gave an instruction as follows: "It is not essen-
tial to a conviction in this case that the prosecutrix, Isabelle
Dollarhide, should be corroborated by the testimony of other
witnesses as to the particular acts constituting the offense.
It is sufficient, if you believe from her evidence and all the
other testimony and circumstances in proof in the case, be-
yond a reasonable doubt, that the crime charged has been
committed.

"While it is the law that the testimony of the prosecuting
witness should be carefully scanned, still this does not mean
that such evidence is never sufficient to convict; by the law of
this state, a female child under the age of sixteen years is
incapable of giving legal consent to an act of sexual inter-
course, so that every act of carnal connection with such a child
by one not her husband will constitute the crime of rape,
whether with or without the consent of such child, and in this
case, if you believe from the evidence beyond a reasonable
doubt that the defendant had sexual connection with the prose-
cuting witness on or about the first day of January, 1913, as
alleged in the information, and that at the time she was under
the age of sixteen years and not the wife of the defendant,
then the defendant is guilty of rape and the jury should so
find."

By this latter instruction the defendant had the benefit, substantially, of all he asked in the refused instruction. The circumstances immediately after the alleged offense tended, we think, to corroborate the testimony of the prosecuting witness rather than to discredit it. It appeared, by the testimony of defendant, as well as by others of the parties present, that the prosecuting witness and defendant and a young man and another girl went into the unoccupied front room of the house referred to, after the alleged intercouse had taken place, and the prosecuting witness spent most of the time until daylight in defendant's lap, hugging and kissing each other, and the other girl and her companion were similarly engaged.

3. Instruction numbered five, asked by defendant, was fully covered elsewhere in the instructions.

4. At the time of the commission of the crime, sections 261 and 264 of the Penal Code, as they read in 1912, were in force. By section 261, rape was there defined as "an act of sexual intercouse, accomplished with a female, not the wife of the perpetrator, under the following circumstances: 1. When the female is under the age of sixteen years." Then follow five other subdivisions covering other circumstances. By an amendment, in 1913 (Stats. 1913, p. 212) section 261 reads: "1. Where the female is under the age of eighteen years." In all other respects the section is unchanged. Section 264, prescribing the punishment for rape, was materially changed. It is now contended that the statute of 1912 was repealed by the act of 1913 and there was, therefore, no law under which defendant could be tried or convicted.

Section 329 of the Political Code is as follows: "The repeal of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act." There is no such express intention shown in the repealing act of 1913. The sentence imposed was authorized by the earlier act. (*People* v. *McNulty,* 93 Cal. 427, [26 Pac. 597, 29 Pac. 61]; 12 Cyc., Crim. Law, p. 770; Monographic note, 94 Am. Dec. 217, 219.)

5. Misconduct of the district attorney is complained of on the ground that he asked a question of a witness called by the

people in rebuttal which properly should have been asked as part of the people's case in the examination of the witness in chief. It appears from the record that a further objection was made on the ground that it called for a confidential communication and the court sustained the objection, apparently on this latter ground. Whether the question involved might properly be put to a witness in rebuttal was largely a matter of discretion with the court. We cannot see that defendant was prejudiced by the mere asking of the question which was not answered.

6. It is urged that a new trial should be ordered because two of the jurymen were in an advanced state of intoxication both during the trial of the case and during the recess of the court. On the motion for a new trial affidavits were read in its support. These affidavits related to juryman Rantz and juryman Mugler. As to the evidence concerning the conduct of juryman Rantz, the affidavits were concededly in substantial conflict, which removes the matter from consideration on appeal.

Hazel Vaughan deposed that she was present at the trial and "carefully watched said jurors who were empaneled to try said case; that Albert Mugler, one of said jurors, was drunk and in an intoxicated condition on the 10th, 11th and 12th, both on the streets of Yreka, California, and on the 12th in the courthouse at Yreka while he was on the jury in said case and was utterly unfit to serve as such juror." C. W. Kaler attended the trial on the 10th, 11th, 12th, and 13th of November, 1913; he deposed "that he had special chance to observe the conduct of said jurors; that Albert Mugler, who was a juror in said case, was drunk while on the jury and that in the opinion of affiant said Mugler was not in a condition to serve as such juror and was incapacitated by reason of his intoxicated condition." Callie Jones deposed that she was present at the trial during the four days mentioned; "that she knows juror Albert Mugler; that said juror Albert Mugler was drunk on each and every day that he sat at said courthouse as a juror; that he was drunk when said court opened on Monday morning; that he was drunk on that day while on the jury; that he was drunk on Tuesday all day; that he was very drunk on Wednesday; that he was utterly unfit to serve as a juror, owing to said intoxication; that the

court did fine the said juror for being drunk; that said case was continued for 12 hours owing to his intoxicated condition.'' John C. Naves deposed that during an intermission of said trial (the day not stated) juryman Wilkins ''spoke to this affiant on the streets of Yreka and said as follows: 'John (meaning affiant) where is Collier (defendant's attorney)? For God's sake put him on to this man Mugler. He has been drinking all day and if he keeps in that condition, I for one, will refuse to sit on the jury with him. We never will be able to agree on a verdict with a man like that.' This affiant further states that he knows juror Albert Mugler, and that on Tuesday evening after court had adjourned, said Albert Mugler was very drunk and utterly incapable of attending to any business,'' and that during the day of Wednesday ''the said juror Albert Mugler was again so intoxicated that he was unable to serve as a juror in said cause.'' Juror Wilkins made affidavit that in the jury room when the jury were deliberating upon their verdict Mugler was in a condition to and did fully, fairly, and intelligently consider the evidence and discuss the same. Several other jurymen made like affidavit. But Wilkins did not deny making the statement to affiant Naves, neither did he nor any other juryman depose that Mugler was in a sober condition at other times during the trial. Mugler may have been duly sober when the jury retired to consider their verdict but it by no means follows that while evidence was being submitted to the jury he was in a condition to receive correct impressions as to the weight and significance of such evidence. Defendant was entitled to have the judgment of each juror uninfluenced by the stimulating and disturbed condition of mind which drunkenness produces. If one juror was by his drunkenness while acting as a juror incapacitated fairly and intelligently to hear and pass upon the evidence it would be a reproach to the law should a verdict of guilty in which his vote was necessary be allowed to stand. It appears from the record of the trial that, on Wednesday afternoon at 2 o'clock when the trial was resumed, Mugler was in such an intoxicated condition as to compel the court to adjourn the further hearing and the juror was fined twenty dollars for contempt of court. Deponent, Hugo V. Miller, deposed that, ''during the trial of said cause he saw the said Albert Mugler many times and particularly before the ver-

dict in said cause and knows that the said Albert Mugler was drunk and utterly incapable of serving as a juror in said case. That prior to the verdict in said cause the said Mugler expressed his opinion freely and openly about said case, and about the testimony in said case and stated freely and openly how he would vote, and that he had made up his mind and nothing could change him. That affiant frequently requested said Mugler not to discuss said case and when he refused to desist and continued to express his opinion publicly about said case and about the merits thereof, this affiant notified the attorney for the defendant, and with the assistance of John C. Naves, from the office of the attorney for the defendant, they tried to get said juror to bed but he still continued to talk and express his opinion about said case and to say how he would vote thereon and that nothing could change him." Deponents Linton and Hutchens deposed to Mugler's drunken condition on Wednesday, the 12th of November, and that in that condition he publicly expressed his opinion as to what he would do in the case."

Juror Starr deposed that, on Thursday morning, the day after he was fined for contempt, Mugler "came into court in a sober condition, remained in that state and went into the jury room duly sober and was in a condition to discuss and did discuss the evidence in the case intelligently." Deponent did not speak of Mugler's condition during the other days of the trial and there was no evidence submitted on Thursday. Juror Mugler deposed that, "on Wednesday, November 12, affiant became intoxicated and on convening the court on the afternoon of that day (there was no session in the forenoon) the court at the request of both the district attorney and counsel for defendant granted a continuance of the case until Thursday morning at 10 A. M. and at that time affiant was duly sober; that the case was given to the jury on the afternoon of Thursday, November 13, 1913, and at that time and all times while hearing the evidence, affiant fully and intelligently considered the evidence; . . . that he never to his knowledge, ever formed or expressed an opinion as to the guilt or innocence of the defendant until he had retired to the jury room to deliberate on the verdict, and in this regard affiant admits that on one or two occasions during the times herein mentioned he was quite intoxicated outside the court-

room and during the adjournment of court and at the convening of court on Wednesday afternoon, November 12th, but that he never was in a condition of intoxication while evidence was being taken or rulings of the court being made or arguments of counsel were had not to fully and intelligently hear and consider all that was going on in said trial.'' District Attorney Hooper deposed to the intoxication of Mugler on the 12th and the contempt proceedings and that on the following morning Mugler came into court ''apparently sober.''

It appeared that deponent Hazel Vaughan is defendant's sister and deponent Callie Jones is his mother and that deponent Naves was a clerk in the office of defendant's attorney, Mr. Collier. It also appeared that defendant's attorney was told of the facts stated in the depositions of Miller and Linton that Mugler had, while in an intoxicated condition, declared that his mind was made up and nothing could change it.

In the case of the *People* v. *Romero,* 12 Cal. App. 466, 470, [107 Pac. 709, 711], the alleged intoxication of the juryman occurred during recess of the court and, as was stated in the opinion: ''several jurymen deposed that at no time during the proceedings while evidence was being taken or when the jury retired to consider their verdict was Hayes intoxicated, but, on the contrary, 'he was sober during the trial, and in all ways perfectly able to consider the evidence introduced at the trial of said cause and to intelligently exercise his judgment thereon.' '' It was further said in the opinion: ''The fact that a juror drank intoxicating liquor during recess of the court will not vitiate the verdict if it appears from the affidavits of his fellow jurymen, as here, 'that the juror while sitting or deliberating as a juror, was sober, intelligent and in a fit condition to understand and deliberate upon the evidence and determine the verdict.' '' (Citing *People* v. *Deegan,* 88 Cal. 602, [26 Pac. 500].)

In *People* v. *Boyd,* 16 Cal. App. 130, 135, [116 Pac. 323], the question of excessive indulgence in liquors by jurymen during recess of the court was under consideration, but there was a substantial conflict of evidence on the subject which, under the rule, removed the question from consideration here. Besides, there was no evidence showing that the juror com-

plained of was not sober while he was actually engaged in performing his duties as a juror.

In the present case there is some evidence that the juryman Mugler was intoxicated while in the jury box, during the progress of the trial, to an extent which incapacitated him from intelligently considering the evidence. There is no conflict in the affidavits unless it can be said that Mugler's affidavit creates it. Two of the affiants, who deposed to his condition while evidence was being taken, were closely related to defendant—one his mother and one his sister—to which fact the court must have attached sufficient importance to justify it in disregarding their opinion. The only other affiant deposing to Mugler's condition while evidence was being taken was affiant Kaler. His statement was that Mugler was drunk every day of the trial and particularly on the first three days and while "he was on the jury," but he does not state that he was in that condition while evidence was being taken. On the fourth day the affidavits show clearly that Mugler was duly sober. The court doubtless concluded that as between the sweeping statement made by Kaler and the specific statement made by the juror the latter was the more dependable. To say that there was no substantial conflict we must hold that the court was not justified in accepting Mugler's statement as true. We cannot see our way clear to do this. Besides, we are influenced in some degree in our conclusion by the fact that defendant's counsel knew of the condition of Mugler during the recess of court and that he had made statements while intoxicated as to how he would vote when considering the verdict. Where misconduct of a juror is known to the complaining party and is of such a character as to disqualify the juror, it is the duty of the party complaining promptly to call the attention of the court to such misconduct. In *Ipswitch* v. *Fernandez,* 84 Cal. 639, 641, [24 Pac. 298], the court said: "If, then, the intoxication, which plaintiff avers to have commenced at the beginning of the trial, and continued to its close, was apparent to him, he could not keep quiet on the subject, take the chances of a favorable verdict, and then avail himself of it for the first time after defeat." (See 1 Hayne on New Trial, sec. 27; *Monaghan* v. *Rolling Mill Co.,* 81 Cal. 190, 194, [22 Pac. 590]; *Doolin* v. *Omnibus Cable Co.,* 140 Cal. 369, 375, [73 Pac. 1060].) But

for this feature of the matter we should be disposed to hold that defendant did not have such a trial as the constitution entitled him to. Had the conduct of Mugler been called to the attention of the court and satisfactory proof made of it and a demand made that he be discharged, it would have been the duty of the court, in the interest of justice and of orderly procedure, to grant the demand. As defendant seems to have knowingly taken the chance with this juror he must be deemed to have waived the objection now urged and should not be heard to complain of the verdict.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.