[Crim. No. 5856. In Bank. Nov. 21, 1956.]

THE PEOPLE, Respondent, v. JOHN RUSSELL
CROOKER, JR., Appellant.

Robert W. Armstrong, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello and Lewis Watnick, Deputy District Attorneys, for Respondent.

McCOMB, J.—This is an automatic appeal from a judgment of guilty of murder in the first degree after trial before a jury.

Viewing the record in the light most favorable to the People, it discloses that Norma McCauley on July 4, 1955, attended a barbecue dinner at which Mr. Baird was present. About 12 :15 a. m., July 5, 1955, he accompanied Mrs. McCauley in her car to her home. Two other persons followed them in Mr. Baird's car. They arrived at Mrs. McCauley's home at 1100 Somera Road, Los Angeles, around 12 :30 a. m. Mr. Baird entered the house with Mrs. McCauley, said goodnight, walked out to his car and left in it with the persons who had followed him to Mrs. McCauley's residence.

Defendant, who had been employed as a houseboy in the deceased's home, freely and voluntarily wrote and signed a confession in which he stated that late in the evening of July 4, 1955, he went to the deceased's home, entered the house through the rear and hid in a closet in her children's room until they were asleep.

He stated in it that Mrs. McCauley came home about 12 or 1 o'clock and he waited until she was in her own bed-

room. He then entered it and talked with her for over an hour in an endeavor to have her tell him "her reasons and feelings for leaving me." He said she would not talk about it.

Finally, being sleepy, she began to doze and was going to sleep, whereupon he found a kitchen knife about 10 inches long with a blade about 6 inches. He then went back to the chaise longue upon which she was reclining, put the knife in his coat pocket and knelt beside her for a long time. After she was asleep he took her throat in his hands and she choked and started to scream.

Hearing the maid, he reached for the knife and pushed and pushed on it, but Mrs. McCauley still made sounds and struggled. He then choked her with some clothes which he put around her throat. After this he left the house, returned to his apartment and fell asleep until shortly before noon.

After trial the jury returned a verdict reading: "We, the Jury in the above entitled action, find the Defendant, John Russell Crooker, Jr., guilty of murder, a felony, as charged in . . . the . . . information and find it murder of the first degree."

Defendant relies for reversal of the judgment on these grounds:

*First: That he was denied due process of law because of the refusal of the investigating officers to allow him to consult with an attorney upon demand being made that he be permitted to do so.*

This contention is without merit. Defendant testified that he made repeated requests for an attorney from the time of his arrest and throughout his questioning by the officers. Officer Gotch testified that the first time defendant asked to call an attorney was at the Central Station, when the following occurred:

"Q. When he made the request for an attorney, what did you tell him? A. I asked him who did he want for an attorney.

"Q. And he said what? A. He stated he didn't know.

"Q. What else did he say on this subject? A. I stated to him that after our investigation was concluded he could call an attorney, and if he didn't have funds to hire an attorney, when he went to Court a public defender would be assigned to handle his case.

"He then stated that he had a friend who had been an instructor at Pepperdine College that would probably handle the case for him. I asked him who the name was, and he

said it was a man by the name of Simpson, who lived in Long Beach.

"Q. He asked you if he could call an attorney at that time, and you told him that he could call after your investigation was completed, is that right? A. I told him, after I was through with the investigation, he could make a call."

Several other officers denied they ever heard defendant ask for an attorney and testified that defendant was told he did not have to say anything if he didn't want to. They also testified that no force was used against him and that his confession was freely and voluntarily made.

The applicable test as to the admissibility of a confession is whether, considering the circumstances, the confession was freely and voluntarily made without any inducement held out to the accused. (*Rogers* v. *Superior Court*, 46 Cal.2d 3 at 10 [11] [291 P.2d 929].)

An examination of the record discloses conflicting testimony, that of the officers denying any force or that promises were made to defendant in consideration of the confession he made, and defendant's statement that he was slapped on one occasion and struck in the stomach on several occasions. In addition, when he took the stand, defendant was examined in detail as to his confession by the deputy district attorney and in each instance he admitted the officers had not told him what to say or write in his confession.

The conflict in the testimony was thus squarely placed before the jury, whose finding was resolved against defendant's contentions, and it is binding upon this court. (*People* v. *Mehaffey*, 32 Cal.2d 535 at 548 [7], 553 [11] [197 P.2d 12].)

The trial court instructed the jury as follows: "You are instructed that a defendant in a criminal case has a constitutional right to counsel at all stages of the proceedings. Refusal to grant a prisoner's request for counsel constitutes a denial of fundamental rights. Whether or not the defendant asked for counsel, and if he did, whether he was or was not denied an opportunity to consult with counsel, are circumstances you may consider, among others, in determining whether the written confession was voluntary or involuntary."

Thus the question was presented to the jury for its determination as to whether defendant's request for an attorney and the officers' conduct relative thereto resulted in a denial of defendant's fundamental rights, and the jury found against defendant's contention. In view of the evidence, we are of the opinion the jury's determination was amply supported.

The due process clause of the fourteenth amendment of the federal Constitution and article I, section 13, of the California Constitution guarantee a defendant the right to be represented by counsel in every stage of the proceedings, and deprivation of this guarantee may be a violation of the due process clause of the fourteenth amendment. ██ To constitute deprivation of due process, however, the denial of the right of the accused to be represented by counsel in every stage of the proceedings must have so fatally infected the regularity of his trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice. (*Lisenba* v. *California,* 314 U.S. 219, 236 [62 S.Ct. 280, 86 L.Ed. 166] ; *cf. Stroble* v. *California,* 343 U.S. 181 at 197 [72 S.Ct. 599, 96 L.Ed. 872].)

██ The burden of showing unfairness and a miscarriage of justice by the denial of defendant's right to counsel in some stage in a proceeding against him rests upon the defendant. (*Stroble* v. *California, supra,* at p. 198.)

The Supreme Court of the United States in *Stroble* v. *California, supra,* quotes with approval from *Adams* v. *United States ex rel. McCann,* 317 U.S. 269 at 281 [63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435], where it said: "If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality."

From an examination of the record and the statements of fact set forth above, it appears the police officers' conduct relative to defendant's request for an attorney in no way affected the voluntariness of defendant's confession. On the contrary, the record discloses ample evidence to support the jury's finding that it was freely and voluntarily made without duress or the promise of reward.

In the one instance in which defendant requested an attorney the officers' attitude thereto in no way affected the voluntariness of the confession nor did it in any way result in any unfairness to defendant at the trial. There was no miscarriage of justice.

██ *Second: That defendant's confession was obtained in violation of his constitutional rights and therefore was inadmissible in evidence.*

This contention is likewise devoid of merit. As pointed out above, there was a conflict in the evidence as to whether the

confession was voluntary. There was also a conflict in the evidence as to the facts upon which the conclusion was necessarily based that the confession was free and voluntary, by the court in the first instance and finally by the jury to whom the matter was submitted on proper instructions. Since the evidence fully supports the finding of the trial court and the jury, their finding that the confession was freely and voluntarily made and not in violation of any of defendant's constitutional rights is binding upon this court. (*People* v. *Mehaffey, supra.*)

In *People* v. *Gonzales*, 24 Cal.2d 870 at 876 [4] [151 P.2d 251], Mr. Justice Shenk thus states the rule: ''The procedural steps in the matter of receiving confessions in evidence are outlined in the decisions. At the time the confession is offered, it is incumbent on the prosecution to lay the foundation for its introduction by preliminary proof showing that it was freely and voluntarily made. (Citing authorities.) Before the confession is received, however, the defendant if he requests it must be accorded the opportunity to introduce evidence to overcome the prima facie showing, and if incrimination is dependent upon the confession a refusal of the court to permit such opportunity may constitute prejudicial error. (Citing authorities.) It is the function of the court in the first instance to resolve any conflict in the evidence on the subject (citing authorities), and if the court concludes that the confession was not free and voluntary it has the power and is in duty bound to withhold it from the jury's consideration. However, if there is evidence that the confession was free and voluntary, it is within the court's discretion to permit it to be read to the jury, and to submit to the jury for its determination the question whether under all the circumstances the confession was made freely and voluntarily. (Citing authorities.) In such a case the court passes preliminarily on the question of the voluntary nature of the confession and its admissibility and although it may determine that the confession is voluntary and admissible, its ruling is not binding on the jury; and it is for that body 'to determine in the last analysis whether a confession is freely and voluntarily made.' (Citing authorities.) The jury determines the issue of the nature of the confession, that is, whether it is voluntary or involuntary, on all the evidence on the issue; and the court is not required to receive evidence out of the hearing of the jury for the purpose of determining

preliminarily the question of admissibility. (Citing authorities.)''

*Third*: *That the trial court erred in striking from the instruction relative to defendant's constitutional right to have counsel at all stages of the proceedings, which is set forth above, the following*: *"Should you find from the evidence in this case that the defendant made requests for counsel which were refused by the officers who had him in custody, then, in that event, I instruct you that People's Exhibit 18 in evidence, the written confession of the defendant, should be absolutely disregarded by you in the determination of this case."*

There was no error in the omission from the instruction which the court gave. ■ The jury may accept as true a portion of the testimony of a witness and disbelieve the remainder or have a reasonable doubt as to its correctness. (*People* v. *Hill*, 126 Cal.App.2d 378 at 380 [3] [272 P.2d 113].) ■ The burden is upon defendant to show that through wrongful conduct he was deprived of a fair trial. (*People* v. *Guarino*, 132 Cal.App.2d 554 at 558 [3] [282 P.2d 538] ; *Stroble* v. *California, supra*.)

Defendant does not contend that his confession was false. On the contrary, as pointed out above, when he was examined during the course of the trial as to the statements in the confession he admitted he had made them and only denied he had in fact killed the decedent.

■ *Fourth*: *That certain action which took place in the district attorney's office constituted prejudicial error.*

It did not. In the afternoon of July 6 defendant was taken to the office of the district attorney, who asked defendant to repeat the confession he had previously written. Defendant asked the district attorney if he would let him have an attorney. Mr. Roll, the district attorney, had Mr. Simpson, the attorney suggested by defendant, called on the telephone, and when defendant, while talking with Mr. Simpson said that they were making him answer their questions, Mr. Roll interrupted the conversation and told the attorney there was no coercion used at all and everything defendant said was free and voluntary.

Upon objection of defendant, all that occurred in the district attorney's office was excluded from the evidence. It is therefore obvious that no prejudice resulted to defendant from anything that might have occurred at that meeting.

■ *Fifth*: *The trial court erred in denying defendant's*

*motion for a new trial because of misconduct of the jury in consuming alcoholic beverages after submission of the case to them.*

This contention is not sound. It was stipulated that after the case was submitted to the jury and prior to their evening meal on December 8, 1955, 10 of the 12 jurors had consumed "one drink apiece and no more" and that one juror drank a double Manhattan. After having consumed the alcoholic beverages the jurors had dinner, slept the entire night and had breakfast the following morning. They then resumed their deliberations, did not go out to lunch but had lunch sent in to them, and reached a verdict at about 1:30 in the afternoon on December 9, 1955.

It is a matter of common knowledge that the effect of the quantity of alcohol consumed in the instant case, followed by a large meal, a night's sleep and breakfast, would have been entirely dissipated and could have had no influence upon the mental operations of the jury. In passing upon a similar question in *People* v. *Van Horn,* 119 Cal. 323 at 333 [51 P. 538], this court said: "To set aside a verdict on account of these facts would be preposterous." (*Cf. People* v. *Leary,* 105 Cal. 486 at 491 et seq. [39 P. 24]; *People* v. *Sansome,* 98 Cal. 235 at 239 [33 P. 202]; *People* v. *Bemmerly,* 98 Cal. 299 at 301 [33 P. 263]; *People* v. *Deegan,* 88 Cal. 602 at 605 [26 P. 500]; *People* v. *Romero,* 12 Cal.App. 466 at 470 [107 P. 709].)

In the present case the trial court passed upon the question here presented on a motion for a new trial and held that the consumption of the intoxicant had not prejudiced defendant, nor had it resulted in a miscarriage of justice. The evidence amply supports this conclusion.

*Sixth: The evidence was insufficient to support the judgment.*

This proposition is untenable. After conviction all *intendments are in favor of the judgment and a verdict will not be set aside upon the ground of insufficiency of the evidence unless the record clearly shows that upon no hypothesis is there substantial evidence to support it.* (*People* v. *Lindley,* 26 Cal.2d 780 at 791 [7] [161 P.2d 227].)

Applying this rule to the facts in the instant case the record discloses the corpus delicti was amply proven by the finding of decedent's body which had been strangled and stabbed and the testimony of the doctor that decedent's death

was due to the stab wounds and strangulation. Therefore, the confession of defendant was admissible to show he had been lying in wait for the decedent and had stabbed and choked her, with the result that she died.

 *Seventh*: *That the "silent verdict" of the jury as to punishment was insufficient to impose the penalty of death.*

In the circumstances of the record before us this contention is likewise untenable. The trial court instructed the jury relative to the penalty as follows: ''The law of this state provides that every person guilty of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury that finds him guilty. If you should find the defendant guilty of murder in the first degree, it will be your duty to determine which of the two penalties shall be inflicted, the death penalty or confinement in the state prison for life. If you should fix the penalty as confinement in the state prison for life, you will so indicate in your verdict, using a form that will be handed to you when you retire to deliberate, but if you should fix the penalty as death, you will not specify the death penalty in the verdict and you will say nothing about punishment in the verdict.

In determining which punishment shall be inflicted, you are entirely free to act according to your own judgment.''

It is urged that the form of verdict submitted to the jury under the foregoing instruction does not adequately permit the jury to express in the verdict its intention as to the penalty when the death penalty is imposed. As noted, the instruction provides that ''If you should fix the penalty as confinement in the state prison for life, you will so indicate in your verdict.'' The argument seems to be that this court should also require that the trial court give an instruction providing that ''If you should fix the penalty at death you should so indicate in your verdict,'' and accordingly provide such a form. It is sufficient to note that the form of verdict which it is urged that this court now require was furnished to the jury and returned with the death penalty imposed in the case of *People* v. *Green,* 217 Cal. 176, 177 [17 P.2d 730]. (See also *People* v. *Orcalles,* 32 Cal.2d 562, 567 [197 P.2d 26], footnote 1; *People* v. *Hall,* 199 Cal. 451, 456 [4] [249 P. 859]; *People* v. *Green, ante,* pp. 209, 224, footnote 3 [302 P.2d 307].)

The judgment, order denying defendant's motion to set

aside the verdict, and the order denying the motion for a new trial are each affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I disagree with the italicized portion of the following statement from the majority opinion: "The due process clause of the fourteenth amendment of the federal Constitution and article I, section 13, of the California Constitution guarantee a defendant the right to be represented by counsel in every stage of the proceedings, and deprivation of this guarantee may be a violation of the due process clause of the fourteenth amendment. *To constitute deprivation of due process, however, the denial of the right of the accused to be represented by counsel in every stage of the proceedings must have so fatally infected the regularity of his trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice.* (*Lisenba* v. *California*, 314 U.S. 219, 236 [62 S.Ct. 280, 86 L.Ed. 166] ; *cf. Stroble* v. *California*, 343 U.S. 181 at 197 [72 S.Ct. 599, 96 L.Ed. 872].)"

Part of the italicized statement is found in the Lisenba case. However, it affirmatively appears in the opinion in the Lisenba case (230, 231) that defendant had the advice of counsel at all times. The Supreme Court was there speaking of an allegedly coerced confession. It is said (pp. 236, 237) : "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial. Such unfairness exists when a coerced confession is used as a means of obtaining a verdict of guilt. We have so held in every instance in which we have set aside for want of due process a conviction based on a confession."

In the Stroble case an allegedly coerced confession was also involved. There counsel was denied the privilege of consulting defendant during his interrogation by the district attorney. The Supreme Court said (at pages 197 and 198, citing the Lisenba case) that "Upon the facts of this case, we cannot hold that the illegal conduct of the law enforcement officers in not taking petitioner promptly before a committing magistrate,

coerced the confession which he made in the District Attorney's office or in any other way deprived him of a fair and impartial trial.

"As to the refusal of the prosecutors to admit counsel during their interrogation of petitioner, counsel stated that he had come to the District Attorney's office at the request of petitioner's son-in-law merely to inquire of petitioner as to his guilt. *At no point did petitioner himself ask for counsel.* In light of these facts, the District Attorney's refusal to interrupt the examination of petitioner, which had been proceeding for almost an hour, so that counsel could make inquiry for petitioner's son-in-law, does not constitute a deprivation of due process, either independently or in conjunction with all other circumstances in this case." (Emphasis added.)

In *In re Masching,* 41 Cal.2d 530, 534 [261 P.2d 251], defendant requested counsel, and a continuance on the ground that he had been "confined to bed." His request was denied. We there said that "Under all the circumstances this procedure amounted to a denial of petitioner's constitutional right to counsel. It follows that his conviction cannot be permitted to stand and that he should be remanded to custody for further proceedings in the municipal court in conformity with his right to counsel. (*In re McCoy,* 32 Cal.2d 73, 76-77 [194 P.2d 531]; see *In re Egan,* 24 Cal.2d 323, 337 [149 P.2d 693]; *cf. People* v. *Lanigan,* 22 Cal.2d 569, 572-577 [140 P.2d 24, 148 A.L.R. 176].)" In *People* v. *Lanigan,* 22 Cal.2d 569, 575 [140 P.2d 24, 148 A.L.R. 176], we said, quoting from *Glasser* v. *United States,* 315 U.S. 60, 75, 76 [62 S.Ct. 457, 86 L.Ed. 680], "To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske [a codefendant] is at once difficult and unnecessary. *The right to have the assistance of counsel is too fundamental and absolute* to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. [Citing cases.]" (Emphasis added.) We continued: "Although the Sixth Amendment is applicable only to trials in federal courts (*Betts* v. *Brady,* 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595]), the same right is protected in this state by article 1, section 13 of our Constitution providing that 'In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to appear and defend, in person and with counsel.'"

In *People* v. *Robinson,* 42 Cal.2d 741, 745, 746 [269 P.2d 6], we again quoted from the Glasser case and the Lanigan

case in reversing a judgment. "Even as we have held that the right to the assistance of counsel is so fundamental that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing, and the failure of that court to make an effective appointment of counsel, *may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment.*" (Emphasis added; 315 U.S. 60, 70.)

In view of the Glasser case and the California cases following it, it appears to me that the statement in the majority opinion heretofore set forth is incorrect. If we continue to follow the Glasser case, we will find it "unnecessary" to determine the exact amount of prejudice arising from a denial to defendant of counsel at every stage of the proceeding in any court whatever! As was said in the Glasser case "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

I have heretofore pointed out that the Stroble case is not like the case at bar since there the defendant did not himself ask for counsel. The citations of the Stroble and McCann (317 U.S. 269 [63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435])* cases are, therefore, inapplicable here.

The defendant's confession was undoubtedly an important factor in defendant's conviction of the crime of which he was accused. The confession was made without benefit of counsel which had been requested by defendant. It appears to me that if our constitutional safeguards are to be observed, they should be observed to the letter. This concept is forcibly declared by the Supreme Court of the United States in a recent decision (*Ullmann* v. *United States,* 350 U.S. 422 [76 S.Ct. 497, 100 L.Ed. 511), decided March 26, 1956). Mr. Justice Frankfurter speaking for the court stated (p. 501) : "Nothing new can be put into the Constitution except through the amendatory process. Nothing old can be taken out without the same process.

"No doubt the constitutional privilege may, on occasion, save a guilty man from his just deserts. It was aimed at a more far-reaching evil—a recurrence of the Inquisition and the Star Chamber, even if not in their stark brutality. Pre-

*The McCann case was involved with the question of waiver of counsel and trial by jury.

vention of the greater evil was deemed of more importance than occurrence of the lesser evil. Having had much experience with a tendency in human nature to abuse power, the Founders sought to close the doors against like future abuses by law-enforcing agencies.

"As no constitutional guarantee enjoys preference, so none should suffer subordination or deletion. It is appropriate to read the conviction expressed in a memorable address by Senator Albert J. Beveridge to the American Bar Association in 1920, a time when there was also manifested impatience with some of the restrictions of the Constitution in the presumed interest of security. His appeal was to the Constitution —to the whole Constitution, not to a mutilating selection of those parts only which for the moment find favor. [He said:] 'If liberty is worth keeping and free representative government worth saving, we must stand for *all* American fundamentals—not some, but all. All are woven into the great fabric of our national well-being. We cannot hold fast to some only, and abandon others that, for the moment, we find inconvenient. If one American fundamental is prostrated, others in the end will surely fall. The success or failure of the American theory of society and government, depends upon our fidelity to every one of those inter-dependent parts of that immortal charter of orderly freedom, the Constitution of the United States.'' (Beveridge, The Assault upon American Fundamentals, 45 Reports of American Bar Assn., 188, 216 [1920].) To view a particular provision of the Bill of Rights with disfavor inevitably results in a constricted application of it. This is to disrespect the Constitution.''

I am of the opinion that defendant's requested instruction relative to the jury's disregard of the confession should have been given. Defendant was entitled to, and should have been accorded, the right to counsel at the time he made the confession. As a result, the confession was obtained in violation of his constitutional rights and should not have been considered by the jury.

I would therefore reverse the judgment.

Appellant's petition for a rehearing was denied December 19, 1956. Carter, J., was of the opinion that the petition should be granted.