[Crim. No. 232.   In Bank.—December 16, 1897.]

THE PEOPLE, Respondent, v. B. W. VAN HORN et al., Appellants.

CRIMINAL LAW—PRELIMINARY EXAMINATION—POSTPONEMENT WITHOUT CONSENT OF DEFENDANT—JURISDICTION TO COMMIT.—Any error committed in the postponement of a preliminary examination, on motion of the prosecution, for more than six days, without the consent of the defendant, in violation of section 861 of the Penal Code, in order to secure the attendance of witnesses for the prosecution, who appeared and testified at the adjourned examination, does not affect the jurisdiction of the magistrate to commit the defendant upon probable cause shown therefor.

ID.—MOTION TO SET ASIDE INFORMATION—ERROR NOT REVIEWABLE.—A motion to set aside an information on the ground that the defendant had not been legally committed by a magistrate, is not in the nature of an appeal from the order of commitment by the magistrate; and mere errors alleged to have occurred at the preliminary examination cannot be reviewed on such motion.

ID.—APPEAL—DEFECT IN PRELIMINARY EXAMINATION—SUBSTANTIAL RIGHT.—A defendant, who has been convicted by a jury in the superior court after a fair trial upon an information, cannot avoid the verdict for any reason founded on an alleged defect in the preliminary examination and commitment, unless by such defect he was deprived of some substantial right.

ID.—CONSTRUCTION OF CODE—TEMPORARY ILLEGAL CONFINEMENT—FAILURE TO USE REMEDY—ABSENCE OF LEGAL PREJUDICE.—Section 861 of the Penal Code is intended to protect a party from loss of liberty for an unreasonable time under the pretext of a criminal charge against him; and if the defendant should be freed from custody because held without his consent more than six days before preliminary examination, he could be rearrested upon another complaint, and if he remained in temporary illegal confinement, without using any remedy therefor, the mere postponement of the hearing does not affect the jurisdiction of the magistrate to hold a preliminary examination of the defendant then in custody, and if the examination then proceeded to a commitment based on probable cause, the defendant has suffered no material prejudice in the matter of the commitment, and has suffered no legal prejudice because at the time to which the examination was continued witnesses for the prosecution, whose attendance could not be procured within the six days, appeared and testified.

ID.—HOMICIDE—ARREST OF DECEASED—DEATH FROM HOSTILE MOB—EVIDENCE—ANTICIPATION OF DEFENSE.—Where it appeared that defendants accused of murder had arrested the deceased upon a charge of murder, and that deceased was shot and hung upon a mountain trail

in a sparsely settled country, and that the defendants relied upon the defense that the deceased had been taken from their custody and killed by a hostile mob, and there was ample evidence to warrant the jury in finding the defendants guilty of the killing, unless it was done by a mob as claimed by them, it was not error to permit the prosecution to anticipate the declared defense by calling a number of persons who lived within several miles of the place of the homicide as witnesses, to prove their absence at the time of the killing, and that there could not have been a mob on the trail where the killing was done.

ID.—TESTIMONY AS TO CONSPIRACY AND ACTS OF CONSPIRATORS—DECLARATIONS OF THIRD PERSON SHOT—ORDER OF EVIDENCE—INNOCENCE OF DECEASED.— Where there was evidence tending to show a prima facie case of conspiracy between the defendants and a few other persons, and that the homicide was the result of such conspiracy, the order in which the evidence as to the conspiracy and the acts of the conspirators should be proved was in the discretion of the court; and when the subsequent acts of the alleged conspirators made the statements of the person alleged to have been shot by the deceased admissible, the order in which such evidence was received was immaterial; and it was permissible to permit the prosecution to show that such person made differing statements, and to offer evidence tending to show that the deceased did not shoot such person.

ID.—LETTER FOUND UPON PERSON SHOT—IMMATERIAL EVIDENCE—REFUSAL TO PERMIT STATEMENT OF CONTENTS—HARMLESS RULING.—The address and contents of a letter found upon the person alleged to have been shot by deceased, and which was buried with his body, are immaterial, and could not be pertinent to the guilt or innocence of the defendants; and it cannot be prejudicial or reversible error for the court to refuse to permit defendants to state the contents of such letter in their offer of proof.

ID.—IMPANELING JURY—ILLNESS AND DISCHARGE OF JUROR—SELECTION OF NEW JUROR.—Under section 1123 of the Penal Code, a juror may be discharged on account of sickness after the jury has been impaneled and before the introduction of evidence; and another juror may then be regularly drawn, examined, accepted, and sworn.

ID.—INSTRUCTION—MODIFICATION—VERBAL ADMISSIONS OF PARTY—CAUTION— PROVINCE OF JURY—REVIEW UPON APPEAL.—An instruction requested by the defendants to the effect that the verbal admissions of a party should be received "with great caution" is properly modified by striking out the word "great"; and where such requested instruction contained matter of encroachment upon the province of the jury, for which it might have been refused, defendants cannot complain upon appeal of error of the court in giving it.

ID.—INSTRUCTIONS ALREADY GIVEN—INAPPLICABLE INSTRUCTIONS.—Instructions requested upon the subject of reasonable doubt, upon which the court had already fully instructed the jury, and instructions requested as to disregarding statements of the prosecuting attorney of facts not proved, not called for by anything appearing in the record, are properly refused.

ID.—NEW TRIAL—DRINKING OF LIQUOR BY JURORS—REQUEST OF SHERIFF—
TRIVIAL OCCURRENCE.—The mere casual drinking of a small quantity of
liquor by some of the jurors just before supper, at request of the
sheriff, and after one of the jurors had invited another to take a
drink, where it appears that no one of them was intoxicated, or
affected in any way by what they drank, is too trivial an occurrence
to constitute ground for a new trial.

APPEAL from a judgment of the Superior Court of Trinity
County and from an order denying a new trial. John F. Ellison,
Judge.

The facts are stated in the opinion of the court.

Oregon Sanders, D. G. Reid, and H. R. Given, for Appellants.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy
Attorney General, for Respondent.

McFARLAND, J.—The defendants, Van Horn and Crow,
were charged by information with the murder of one A. D. Lit-
tlefield. They were convicted of murder in the second degree
and sentenced to imprisonment in the state's prison, and they
appeal from the judgment and from an order denying a new
trial.

The transcript is quite voluminous, and appellants make a
great many points upon exceptions taken by them to rulings of
the court below upon the admissibility of evidence and to in-
structions given and refused. We do not think that any of these
points are very important or show reversible error. Some of
them will be noted hereafter.

The most serious point made by appellants arises upon the de-
nial of the court to grant their motion to set aside the informa-
tion, the motion being upon the ground "that before the filing
thereof the defendants had not been legally committed by a mag-
istrate," as provided in subdivision 4 of section 995 of the Penal
Code. The specific facts relied on by appellants are, that at the
preliminary examination the committing magistrate, upon affi-
davit of the prosecuting officer showing the absence of material
witnesses for the prosecution, postponed the hearing for a period
of more than six days without the consent of the appellants.
Appellants contend that this was in violation of section 861 of

the Penal Code, which provides as follows: "The examination must be completed at one session, unless the magistrate, for good cause shown by affidavit, postpone it. The postponement cannot be for more than two days at each time, nor more than six days in all, unless by consent or on motion of the defendant"; and the contention is, that for this reason the defendants were not "legally committed by a magistrate." It is not denied that in other respects the preliminary examination was regularly had and that the order of commitment was properly made. It is true that appellants contend, in connection with this point, that the affidavit made for the continuance was not sufficient; but it is quite evident that a motion to set aside an information is not in the nature of an appeal from the order of commitment made by the magistrate, and that mere errors alleged to have occurred during the preliminary examination cannot be reviewed on such motion.

The commitment by a magistrate after examination of a person charged with a crime will support an information where the magistrate had jurisdiction to make the commitment, and there was no irregularity affecting defendants' substantial rights; and we do not think that a postponement of the preliminary examination beyond six days, whether erroneous or not, affected the jurisdiction. If the postponement worked appellants any legal wrong, such wrong consisted in their temporary illegal confinement by the officer who had them in custody, for which, if not lawful, there would have been a remedy at the time. If they could have been freed from custody, and had procured that result, they, of course, could have been rearrested upon another complaint; but as the examination upon the original complaint proceeded to completion, and was followed by a commitment in due form, the mere postponement of the hearing complained of did not destroy the jurisdiction. A party who has been convicted by a jury in the superior court, after a fair trial, upon an information, cannot avoid the verdict for any reason founded on an alleged defect in the preliminary examination and commitment, unless by such defect he was deprived of some substantial right. Section 861 is evidently intended to protect a party from loss of liberty for an unreasonable time under the pretext of a criminal charge against him; but when, as in the case at bar, he

remains in custody for a short period after the six days, and the examination then proceeds to a commitment which is based on probable cause, it cannot be said that he has suffered any material prejudice in the matter of the commitment. Certainly, he did not suffer legal prejudice because at the time to which the examination had been continued the necessary witnesses for the prosecution, whose presence could not have been procured within the six days, appeared and testified.

We will notice of the other numerous points made by appellants those which we deem of importance, and, in order the better to do so, we will state briefly the main facts in the case.

On the afternoon of the twenty-seventh day of September, 1895, the appellants, Van Horn and Crow, the former being a constable, arrested the deceased, Littlefield, upon the charge of having shot one Vinton on the 25th of the same month. The arrest was made at Eel river, on or near the trail which runs from the river through a mountainous and sparsely settled country, near the boundary line between the counties of Mendocino and Trinity, up over Wylackie Hill and Red Mountain, past what is known as the Red Mountain House, and thus on to Weaverville, the county seat of Trinity county. About four or five miles from the river there is what is known as "the forks of the trail"—one branch going to the Red Mountain House and the other to the house of one Thomas Hayden. When Littlefield was arrested he was engaged with two companions in herding cattle, and was at the time resting near the trail. The defendants disarmed him and started with him up the trail, riding single file, Van Horn being first, Littlefield next, and Crow behind. The defendants were both armed. They were going in this position when last seen by Littlefield's companions, and were shortly afterward seen in the same position by another witness. About sundown two persons, Walter Clark and George Block, who were then at or near the Red Mountain House, which is about two or two and a half miles from said forks, heard three shots from the direction of the forks. About twenty minutes or half an hour afterward the defendants rode up to where Clark and Block were and told them that a mob had taken Littlefield away from them and killed him. Crow said that there were about twenty men in the mob and about twenty shots fired, and Van Horn said

that there were about a dozen men and about a dozen shots fired. Clark suggested going back to see if anything could be done for Littlefield, but defendants said that nothing could be done as Littlefield was dead. The defendants then went on to the house .of a brother of the defendant Van Horn, which is several miles beyond the Red Mountain House. On the morning of the next day the dead body of Littlefield, with three bullet holes in it, was found at or near said forks. The body was suspended by a rope to the limb of a tree, the feet being within a few inches of the ground.

The above facts are not denied by the appellants, except only the hearing of three shots by Clark and Block. The defense was, that Littlefield was forcibly taken away from them and killed by a hostile mob; and it may be remarked here that there was ample evidence to warrant the jury in finding the defendants guilty, unless the killing was done by a mob as claimed by appellants. And so the whole case revolves around the question whether or not there was such a mob, who, against the will of the defendants, took Littlefield away from them and killed him.

One of the main points made by the appellants in the matter of the admissibility of evidence is founded upon exceptions to the rulings of the court allowing the prosecution to prove the whereabouts of a number of persons on the day of the homicide. The country thereabouts was sparsely settled, and the prosecution called a number of persons as witnesses who lived within several miles of the scene of the homicide, and had them testify that on the afternoon of the 27th they were not near the place where Littlefield was killed. This was for the purpose of showing that there could not have been a number of persons present on said trail, as asserted by appellants—an attempt to prove a sort of an *alibi* for the mob. This was an effort on the part of the prosecution to anticipate the defense, which was perhaps unnecessary. If it had been offered in rebuttal, there could have been no plausible objection to it, but, as the testimony was relevant to the main issue in the case, we see no ground upon which it could be held inadmissible because offered in anticipation of the defense which appellants' declarations showed they intended to make. Therefore, we do not think that the court erred in admitting such testimony.

Certain other points of appellants are founded upon exceptions to rulings of the court allowing what is claimed to be inadmissible evidence to prove a conspiracy. It seems from the arguments of counsel here that the prosecution, in addition to resting upon the main facts above stated, had a theory that the killing of Littlefield, either by the appellants themselves or with the aid of others acting in conjunction with them, was the result of a conspiracy between the appellants and a few other persons. The appellants, previous to the arrest of Littlefield, started for the purpose of making the arrest from the house of a man named Thomas Hayden, who lived a short distance from said trail. When they started from Hayden's house there were with them five other men, viz., Thomas Hayden, Buck Laicock, Joseph Gregory, Fred Radcliff, and Gordon Van Horn, all mounted and armed. The prosecution put nearly all of said five other men on the stand, and they testified that they went to a place not very far from said trail, where Vinton had said that Littlefield had shot him a day or two before, for the purpose of examining tracks, etc., about said place. They testified that before they reached the place where they intended to make such examination, the appellants, Van Horn and Crow, left them and went down toward the place where the latter afterward arrested Littlefield, and that they were not present at the place where Littlefield was afterward killed, and knew nothing about that transaction. There was certainly nothing in this testimony that was objectionable. Upon its face it did not differ from the said testimony of other witnesses showing the whereabouts of different persons on that day. If, however, it be assumed that the prosecution was intending to prove a conspiracy between these five persons and the appellants, and also said Vinton, we do not see that any of the evidence admitted by the court was, under that view, inadmissible. The theory of the prosecution in this regard, if there was any theory as to a conspiracy, seems to have been that Vinton was not shot by Littlefield, and that his assertion that Littlefield shot him was a mere pretense which would give the conspirators the color of right to arrest Littlefield, and to claim that he was killed while arrested by a supposed mob. It was proved by the prosecution that Vinton sent for at least some of the alleged conspirators to come to the house of Hayden, where Vinton was; and it was

proven that on the day of the homicide and on the day previous thereto all these persons, supposed to be conspirators, did assemble at the house of Hayden; and that all of them except Vinton, who was unable to go, did leave the house of Hayden together, all armed, on the afternoon of the 27th, and did go in the direction of the trail upon which Littlefield was killed. The general objection is made here, as it is generally made in a defense against an alleged conspiracy, that declarations of the alleged conspirators were improperly allowed against the defendants before there was any sufficient proof of the conspiracy itself. But we do not see how any such objections are available here. In the first place, the order in which evidence as to a conspiracy shall be received is very much in the discretion of the court; and, in the second place, we do not see in this case where any declarations of one alleged conspirator charging or implicating other conspirators were introduced. If there was any conspiracy proved in this case it was proved by the combined acts of the conspirators. These persons assembled at the house of Hayden, where Vinton was stopping; it is apparent that they knew that Vinton had accused Littlefield of shooting him, and that Littlefield was to be arrested; and an hour or two before Littlefield was killed they all, except Vinton, went together in the direction of the place of the homicide; and these facts, with others not necessary to be here mentioned, were sufficient to go to the jury as evidence strongly tending to show a *prima facie* case of conspiracy. The contention that the declarations of one alleged conspirator against the others were improperly admitted can apply, as against these defendants, only, so far as we have observed, to the admission of statements by Vinton to the others that Littlefield had shot him; but how could this have prejudiced appellants when they admit that they arrested Littlefield for his alleged attack on Vinton? There was no pretense of any other cause for the arrest. Moreover, the subsequent acts of the alleged conspirators made the said statements of Vinton clearly admissible; and, this being so, the order in which the evidence was introduced was immaterial. (*People v. Fehrenbach*, 102 Cal. 396, 397; *People v. Daniels*, 105 Cal. 264.) And in this connection we may here say that we see no error in allowing testimony to the effect that Vinton said shortly after he was shot that he did not know who shot him. (Vinton appeared

at the house of Hayden on September 25th suffering from a
severe gunshot wound. He said that he was shot at a certain place
about a mile from Hayden's house by a masked man, whom he
claimed to identify as Littlefield. The prosecution seems to claim
that he shot himself accidentally.) Neither do we see any error
in allowing testimony as to the whereabouts of Littlefield on the
25th; it tended to show that he did not shoot Vinton, and thus
to support the prosecution's theory of a conspiracy.

On the cross-examination of a witness for the prosecution who
had been at the inquest held over the dead body of Littlefield,
he testified that he had found a letter on the person of the de-
ceased; that he had read it and had returned it; and that it had
been buried with the body. The appellants then asked the wit-
ness: "Who was the letter from, and to whom?" An objection
to the question by the prosecution was sustained. Appellants
then offered to prove the contents of the letter, and their offer
was denied, and the court declined, as we understand the record,
to allow appellants' counsel to state what they proposed to prove
as such contents. These rulings are contended by appellants to
be reversible errors. But we cannot imagine how any possible
contents of the letter would have constituted evidence favorable
to appellants as to any of the issues in the case; and counsel have
not suggested any plausible reason why such contents—ascribing
to them any character which counsel might choose to name—
would have been material or pertinent evidence in the case. We
do not think, therefore, that said rulings were erroneous or preju-
dicial to appellants.

There are a number of other exceptions to rulings about the
admissibility of evidence, and it would take a great deal of time
and space to enumerate and specially notice each of them; and
this we deem it unnecessary to do. It is sufficient to say that
most of such rulings were clearly right, and that those about
which there could be any question concern matters of too little
importance to warrant a new trial under any view that could be
taken of their correctness. As hereinbefore stated, the pivotal
question in the case was whether or not the deceased was actually
and forcibly taken away from appellants against their will by a
mob who killed him; and we think that this question was fairly
presented to the jury. Perhaps the prosecution undertook to

prove more than it was called upon to prove, but we do not see that the rights of the appellants were in any way thereby prejudiced.

After the jury had been impaneled to try the case, and before the introduction of evidence, one of the jurors became sick and the court discharged him. To this discharge appellants excepted. Another juror was then regularly drawn, examined, accepted, and sworn. It is now contended that this proceeding was unwarranted and vitiates the judgment. The contention is not maintainable. Section 1123 of the Penal Code justifies the course pursued by the court. (*People v. Brady,* 72 Cal. 490.)

It is contended that the court erred in modifying instruction XXX asked by appellants. This instruction is somewhat lengthy, and refers to the general subject of the caution with which evidence of the verbal admissions of a party should be received. It contained matter which made it, under the opinion in *Kauffman v. Maier,* 94 Cal. 282, an encroachment upon the province of the jury, and might have been refused for that reason. It was given, however, at appellants' request, and they cannot complain. The modification complained of was this: in the instruction, as proposed by appellants' counsel, it was stated that the verbal admissions of a party should be received with "great caution," and the court merely struck out the word "great." No other modification was made. This was certainly not error. The code provision on the subject (Code Civ. Proc., sec. 2061) does not use the word "great" before "caution," and the instruction thus modified stated fully as much as appellants were entitled to have given. Counsel also say: "The court erred in refusing to give instructions asked by defendants (see Trans., pp. 80, 81)." Upon referring to those pages we find that they contain offered instructions upon the subject of reasonable doubt. They were properly refused because the court had already charged the jury fully upon that subject. We do not think that the court erred in refusing the offered instruction on page 82 of the transcript to the effect that the jury should disregard statements of the prosecuting attorneys of facts not proven. It was not called for by anything appearing in the record. We do not observe in appellants' brief any other objection touching the matter of the giving or refusing instructions.

We see nothing in the point that a new trial should be granted because on one occasion some of the jurors took a drink of whisky. It appears that while the jurors were at a hotel under the charge of the sheriff and were washing and preparing to take supper, one of them stepped up to the bar which was in the hotel and asked another juror to take a drink with him, whereupon the sheriff asked all the jurors to take a drink before going in to supper. The jurors all went to the bar; some of them took whisky, in quantity about "two tablespoons"; some of them took cigars, and one took mineral water. It abundantly appears that no one of them was intoxicated "or affected in any way" by what they there drank. To set aside a verdict on account of these facts would be preposterous. (*People v. Leary,* 105 Cal. 502; *People v. Sansome,* 98 Cal. 239.) The invitation to drink given by the sheriff was evidently suggested at the moment by the invitation which one juror had given to another, and therefore there is little force in the intimation that it was a predetermined attempt by the sheriff, who is asserted to have been unfriendly to appellants, to influence the jury—if it were conceivable that a jury could be thus influenced in so grave a matter. It is apparent that if verdicts could be upset by such trivial occurrences it would be easy to bring about such occurrences for the purpose of upsetting verdicts.

We observe no other points calling for special notice.

The judgment and order appealed from are affirmed.

Henshaw, J., Garoutte, J., Harrison, J., and Temple, J., concurred.

Rehearing denied.