[Crim. No. 864.   First Appellate District, Division Two.—September 11, 1919.]

## THE PEOPLE, Respondent, v. RAMON RAZO, Appellant.

[1] CRIMINAL LAW — ROBBERY — LIMITATION OF CROSS-EXAMINATION — POWER OF COURT.—The trial court has the power to exercise a reasonable control over the cross-examination of a witness; and in this prosecution for the crime of robbery the court properly excluded certain questions directed toward the matter of whether the prosecuting witness actually had the coins alleged to have been taken from him, where this matter had already been testified to repeatedly by such witness upon his cross-examination.

[2] ID.—DISCUSSION OF CASE WITH PROSECUTING WITNESS — STATEMENTS OF DISTRICT ATTORNEY IN ARGUMENT—MISCONDUCT—ERROR NOT PREJUDICIAL.—In his argument to the jury, statements of the district attorney of his own knowledge, as distinguished from the summing up of the testimony of the prosecuting witness, that such witness had not talked the case over with him, would be misconduct upon his part, but not such prejudicial error as to warrant a reversal of the judgment where the repeated unequivocal statements of the witness were that he did not talk the case over with the district attorney and his testimony was uncontradicted on this point.

APPEAL from a judgment of the Superior Court of Alameda County.   James G. Quinn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Milton W. Sevier and George M. Naus for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment of conviction of the crime of robbery.   The appellant presents three points upon the appeal.   We shall discuss them in the order in which they are urged.   The first is that the cross-examination of the complaining witness Scott upon a vital fact was improperly and unnecessarily limited by the trial court.   Scott testified that on November 14, 1918, at about 10 o'clock in the evening, he was walking along the street in Oakland when he was attacked by the defendant

and another person; that the defendant knocked him down and cut him with a knife and the other person searched his pockets and took from them two coins, a five and ten cent piece. Appellant argues that as it was necessary for the state to prove that the defendant actually took some property from Scott, that, therefore, the question of whether Scott actually had the coins becomes decisive. He urges that the excluded questions were directed toward this matter and should have been allowed. But this matter was testified to repeatedly by Scott upon his cross-examination. He said he had a Canadian dime and a nickle in his pocket when he left his home, a few moments before the attack; that he looked at the coins before leaving home, and that he knew they were there; that he had his hand in his pocket and felt such coins as he was walking on the street and up to the moment of the attack; that his pockets were good and that the money could not have rolled out in the struggle on the sidewalk. Scott was a negro Pullman porter. It is true that he did not always answer questions as directly as might have been desired; but his examination discloses no effort to evade, but merely the difficulties which come from a lack of precision in speech and in thought, the natural consequences of lack of training. It is evident that he had difficulty in comprehending the exact meaning of many of the questions, and this in itself made it necessary for many questions to be asked a number of times. The court permitted this, and it seems to us that the cross-examination is very complete and comprehensive. Appellant contends that he should have been allowed to ask five certain questions. It is not necessary to discuss the relevancy of each of these questions here. In so far as they were relevant and proper cross-examination, their substance was covered several times in the course of the cross-examination. It appears that the direct examination of Scott covers seven typewritten pages in the record, while the cross-examination covers over fifty pages. [1] The trial court has the power to exercise a reasonable control over the cross-examination of a witness (Code Civ. Proc., sec. 2044), and we think that was all that was done in this case.

[2] The second point urged by appellant is that the deputy district attorney was guilty of misconduct in his argument to the jury. The facts relating to the incident complained of are that the attorney for the defendant upon

cross-examination asked the complaining witness several times if he had talked the case over with the deputy district attorney, to which he replied that he had not. In reply to further questions, Scott stated that he had gone to the office of the deputy district attorney at the close of the trial on the first day and had remained there a short time, but they had not talked about the case; that during the three or four minutes that he remained in the office of the deputy district attorney, said deputy was talking to someone else and he (Scott) was waiting for him to finish talking. In his argument to the jury, the deputy district attorney referred to the attempts of counsel for the defendant to impute to him improper practices in the preparation of his witnesses for the trial; he admitted that he had talked with all the witnesses in the case with whom he had had an opportunity to talk, as a regular and customary part of his duty. He continued as follows: "I say, frankly, and very gladly, that every witness that I could get my hands on who was going on the stand, told me definitely what his testimony was going to be, because I wanted to know what the testimony was going to be." At this point he was interrupted by the counsel for the defendant, who objected to these remarks for the alleged reason that they contradicted the testimony of the witness Scott, who had testified that he did not talk with the deputy district attorney. The deputy district attorney then, in reply to this objection, explained his remark to the jury by saying: "I said every witness that I could get my hands on; I could not get my hands on Mr. Scott." Attorney for the defendant then called attention to the testimony of Mr. Scott, saying: "And Mr. Scott's further testimony was that he was in Mr. Agnew's room, with the door closed." To which the deputy district attorney answered: "The testimony of Mr. Scott was that he had not talked the case over with me at all; he came to my room intending to talk it over with me, but I was busy and did not talk it over with him." Appellant contends that this statement of the deputy district attorney, explaining why he did not talk to Scott, was outside of the record and corroborated the witness, and was, therefore, improper. As the statement appears in the record it is susceptible of being construed as a statement of the testimony of Mr. Scott, and as such it is sustained by the record, for we find upon cross-examination that Scott

testified as follows: "Q. Where did you go with him, after you went through that door? A. Out in his office. Q. Into his office? A. Yes, sir. Q. What did he talk about in there, the weather—what did he talk about? A. Talked about nothing. Q. Didn't talk about anything. How long were you in the room with him? A. About three or four minutes. Q. What did he do during the time you were in his office three or four minutes? A. He was talking to someone else." And again: "Q. What were you doing during the three or four minutes, or whatever time it was, that you were in Mr. Agnew's office yesterday evening? A. I was waiting for him to get through talking." Scott also testified that he went to the office of the deputy district attorney for the purpose of discussing the case.

It does not seem to be an improper summing up of this testimony to say that "the testimony of Mr. Scott was that he had not talked the case over with me at all; he came to my room intending to talk it over with me, but I was busy and did not talk it over with him." However, let us assume that the appellant's construction of this remark is correct and that the deputy district attorney was not referring in the latter part of the sentence to the testimony of Scott on the stand, but was stating his own knowledge of the subject. While clearly this would be misconduct upon his part, yet such misconduct, we think, under the special circumstances of this case, would not be such prejudicial error as to warrant a reversal. Appellant's argument is based upon an insistence that the fact of whether or not the witness Scott talked with the deputy district attorney was important to the defendant's case. But we have the repeated, unequivocal statement of Scott that he did not talk to him. There is a presumption that follows the testimony of every witness that such witness speaks the truth, and this witness remains uncontradicted on this point. Both Scott and the deputy district attorney admitted that they wished to talk to one another about the case. Scott testified that he went to the office of said deputy for the purpose of talking about the case and the deputy district attorney stated in his argument to the jury that he talked with every witness in the case that he could "lay his hands on," and would have talked with Scott if he had had the opportunity. The reason why this avowed intention and desire on the part

of both was not carried out cannot have any bearing upon the matter one way or the other.

The last point made by the appellant is that the judgment is erroneous because the indeterminate sentence law (Pen. Code, sec. 1168), under which it is imposed, is unconstitutional. It is unnecessary for us to discuss this question, because it has been passed upon in *In re Lee,* 177 Cal. 690, [171 Pac. 958], which upholds the validity of this section as to offenses committed after its enactment.

The judgment is affirmed.

Nourse, J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 10, 1919.

All the Justices concurred.