[Crim. No. 2175.  First Dist., Div. One.—May 29, 1941.]

THE PEOPLE, Respondent, v. GUY THOMAS, Appellant.

Raymond W. Shellooe for Appellant.

Earl Warren, Attorney-General, and David K. Lener, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The defendant, Guy Thomas, appeals from a conviction of robbery. He was accused jointly with Edward Perona and John Carston by a complaint filed in the justice's court with having robbed William L. Douthett. Perona and Carston were held to answer on October 11, 1940, and an information filed against them in the superior court. Thomas, having been arrested later, was held to answer on October 14, 1940, and a separate information filed against him wherein he was charged also with three prior convictions of felony. All pleaded not guilty to the charge of robbery, and Thomas admitted the prior convictions. Thereafter it was ordered that the informations be consolidated for trial; however, prior to the date of trial a lesser charge was placed against Carston, to which he pleaded guilty, and as to him the charge of robbery was dismissed. The trial of Thomas and Perona took place before a jury, and they were found guilty of robbery in the first degree. Each was sentenced to imprisonment in the state prison for the term provided by law; but it having been disclosed at the trial by the cross-examination of Perona that previously he had served a portion of a penitentiary sentence for robbery and was then on parole, it was ordered that his sentence run concurrently with the one imposed for the prior conviction. Both appealed, but Perona afterwards abandoned his appeal.

In support of the appeal taken by Thomas it is contended that the evidence is legally insufficient to sustain the conviction. Admittedly, however, on vital points, the testimony is conflicting; and since the jury resolved all conflicts against appellant, its verdict is controlling on appeal. The facts of the case as they were established by the prosecution were as follows: Douthett was a travelling engineer for Aluminum Company of America, and had been in its employ for many years. He drove into Salinas in his car on the morning of October 10, 1940, and about 4 o'clock that afternoon visited the Subway Liquor Store, wherein, after having two drinks with friends, he picked up an acquaintanceship with Thomas, Perona and Carston, all of whom lived in or near Salinas. Thomas had been working at odd jobs in cafes in Salinas; and Carston was a floor worker in a lettuce plant. The kind of employment Perona followed does not appear. The three men had been drinking during the day, and after Douthett joined them in the liquor store he bought

four rounds of drinks. About 6 o'clock Carston suggested taking a ride out to "Eddie's place"; and Douthett, believing it was some sort of a road house, consented to go. It was then growing dark, and taking a bottle of liquor along with them they drove away in Douthett's car, a four-door sedan which he had parked near by. Thomas did the driving, and he drove them to Fort Ord, where he left the others for a while to visit a friend; and then all started back toward Salinas, Thomas again doing the driving. Douthett sat beside him, and Perona and Carston occupied the back seat. It was then about 8 o'clock and quite dark. Instead of continuing along the main highway to Salinas Thomas turned off on a by-road, and after travelling some distance pulled up alongside of the road and stopped. It was there, according to the prosecution's evidence, that the robbery took place. In this regard Douthett testified that instantly after the car stopped he was struck on the head with a blunt instrument by one of the men on the back seat. He exclaimed, "For God's sake, what is going on here—if there is anything you want to have you don't have to go about it that way". He started to get out of the car, but Thomas grabbed him and he was struck a second blow on the head by someone behind him. Although wounded and bleeding, he succeeded in getting out of the car. Thomas and Perona followed, and approaching Douthett one of them said to him, "It is a stick-up and put up your hands"; whereupon they went through his pockets, taking therefrom a small amount of money, just how much Douthett was unable to state; and shortly afterwards Douthett discovered that the wallet he carried in his hip pocket was missing. After the two men rifled his pockets, they searched the back of his car. Perona then wiped the blood off Douthett's face and said to him, "You had better beat it, that fellow will kill you". Fearing further injury Douthett started afoot down the road, and the three men drove away in his car. He continued down the road a short distance in a dazed condition from the effects of the blows on the head and fell in the ditch, lay there for a while, then got up and walked to a farm house and summoned the officers. He further testified that the voice of the man who ordered him to throw up his hands sounded like Thomas' voice; and when asked, "Are you able to testify positively now that Guy Thomas and Eddie Perona went through your

pockets on the side of the road?" he answered, "Yes, I can testify to that".

Douthett's testimony as to the circumstances attending the robbery was corroborated by that of Carston, who was called as a witness for the prosecution. He testified that after starting on the ride they passed around the bottle they had with them, and that on the way back from Fort Ord Douthett and Perona became involved in an argument, during which mention was made of "two guns"; that about that time the car was stopped and Perona got out, and that Douthett started to get out but Thomas grabbed him and pulled him back; that someone said "hit him", and believing there was going to be a fight in which there might be some shooting, he, Carston, drew from his hip pocket a blackjack, made out of a short piece of rubber hose wrapped with friction tape at one end and an iron bolt inserted in the other, and struck Douthett over the head with it; that Douthett still tried to get out of the car, but Thomas held him back, and he, Carston, struck Douthett a second blow on the head with the blackjack; that blood started running down Douthett's face, and turning to Carston Douthett asked what had happened; that thereupon Douthett succeeded in getting out of the car, and Thomas followed; that Perona was already out of the car, and that he then saw Thomas and Perona go up to Douthett as he stood in the roadway, go through his pockets and thereupon search the trunk of his car, after which Perona said, "Come on, let's get out of here"; that Thomas and Perona then got back in the car, and leaving Douthett in the roadway they drove back to Salinas, parked the car near the liquor store, and shortly afterwards separated. Carston further testified that after leaving Douthett and before reaching Salinas Thomas again stopped the car, got out, and taking Douthett's valise from the tonneau of the car said he was going to make a telephone call; that he was gone about five minutes and returned without the valise; that afterwards when they got out of the car near the liquor store Thomas had Douthett's wallet in his hand, and started to throw it in the street, but at Perona's suggestion it was thrown on top of the building. Carston stated that he was carrying the blackjack for his own protection; that he had been threatened with violence by the divorced husband of a woman with whom he was keeping company.

About 9:30 o'clock that night the officers located Douthett's abandoned car on the street, and early the next morning they found his wallet on top of the building where it had been thrown. Besides the valise and its contents consisting of Douthett's personal belongings, there was also missing from the car, according to Douthett, an envelope containing $160 in currency which he claimed he carried in his overcoat, in the car, for expense money on his trips. In view of the testimony so given by Douthett and Carston, and the corroborative facts above mentioned, it would seem that no discussion is required to demonstrate that the verdict of the jury is not without evidentiary support.

Thomas' version of the affair was that on the way back from Fort Ord Douthett became quarrelsome and wanted to fight with Perona; that he, Thomas, tried to pacify the two of them, but was unable to do so; that finally at Douthett's request he stopped the car and Perona got out, presumably to fight; that Douthett started to get out too, saying something about having two guns he would use if he was unable to whip Perona with his fists; that fearing someone might get shot he tried to prevent Douthett from getting out of the car, and that without any suggestion from anyone Carston struck Douthett over the head twice, cutting his head, after which Douthett succeeded in getting out of the car. Continuing, he stated that in order to prevent further violence he got out too, and told Douthett to get in the car and behave himself, but that Douthett refused to get back in the car, whereupon he, Thomas, searched the trunk of the car to find out whether Douthett carried any guns; but none was found. Meanwhile, so Thomas testified, Douthett disappeared down the road; that they spent a few minutes trying to locate him and that he then told Perona to get back in the car and they would drive it back to Salinas and leave it where they found it; that as he got out of the car near the liquor store he picked up Douthett's wallet from on the seat of the car and started to throw it in the street, but at Perona's suggestion it was thrown on top of the liquor store. He denied having told Douthett that it was a "stick-up" or to throw up his hands, or having at any time gone through Douthett's pockets or taken anything from his person or his car.

Perona's story was somewhat different. He stated that when the car stopped on the way back from Fort Ord he got out to urinate; that he observed there was a disturbance in the car, and he heard a blow struck; that he then heard Douthett say, "Don't do that", and instantly a second blow was struck; that Douthett then got out of the car and that he, Perona, wiped the blood from Douthett's face, and said to the men in the car, "Don't hit him any more"; that he asked Douthett if he wanted to be taken to a hospital, but he replied he did not, adding, "just forget everything"; that he then said to Douthett, "For God's sake, get out of here, you may get hurt", and Douthett "took off" down the road. In the meantime, so he stated, Thomas had gotten out of the car and searched the trunk, and after doing so they drove back to Salinas. He denied having gone through Douthett's pockets or having taken anything whatever from him or his car.

It is apparent that at best the testimony so given by Thomas and Perona does no more than create a conflict with that given by Douthett and Carston; therefore, under well settled rules, the conclusion reached by the jury upon the issue of whether there was a robbery is conclusive on appeal. It is true that at the time this happened Carston and Perona were very much intoxicated; that Thomas was more or less under the influence of liquor, and that Douthett had been indulging quite freely. But the record shows that although Douthett was subjected to a rigid and thorough cross-examination, first by counsel for Thomas and then by counsel for Perona, his recollection as to what occurred that afternoon and evening was neither vague nor uncertain; nor was anything disclosed thereby which would justify this court in holding as a matter of law that his story of the robbery was inherently improbable. Obviously the jury, as evidenced by its verdict, was convinced of the truth of his testimony, and since it is the sole judge of the credibility of the witnesses and the weight to be given to their testimony its determination of the disputed issue of fact is controlling.

■ It was alleged in the information that by means of force and fear the defendants took from Douthett "lawful current money of the United States, a leather wallet, a valise", and his automobile; and appellant argues that the evidence fails to show any intent to steal the automobile or

that he took any of the other property mentioned. However, robbery does not depend upon the value of the property taken. The other elements being present, the crime is made out even though the property taken be of slight value (22 Cal. Jur. 841; *People* v. *Walbridge,* 123 Cal. 273 [55 Pac. 902]; *People* v. *Razo,* 43 Cal. App. 251 [184 Pac. 881]); and in the present case the evidence was such as to justify the conclusion that in any event Douthett was robbed of the small amount of money he had in his pocket, his wallet, and his valise; that being so, a case of robbery was established. ■ Proof of motive or conspiracy to commit the robbery was not essential to a conviction, for neither deliberation nor premeditation is made an element of the crime. (*People* v. *De Fehr,* 81 Cal. App. 562 [254 Pac. 588].)

■ Appellant assigns as error the trial court's ruling denying his motion to set aside the information upon the ground that he had not been legally committed by a magistrate. So far as the record shows, no evidence was introduced by appellant to establish the facts upon which he based the motion, and it is held that in the absence of supporting evidence it is not error to deny such a motion. (*People* v. *Hinshaw,* 194 Cal. 1 [227 Pac. 156]; *People* v. *Williams,* 84 Cal. 616 [24 Pac. 145].) However, when the motion was made the district attorney in opposing the same in effect conceded the existence of the facts relied on by appellant, which, briefly stated, were these: At the time appellant's preliminary examination was held on October 14, 1940, the complaint theretofore filed before the magistrate accusing the three men jointly of robbery and upon which the warrants of arrest issued was on file in the office of the county clerk; for that reason the order of commitment made by the magistrate holding appellant to answer was attached to a true copy of the complaint, rather than being endorsed on the original; and thereupon said documents were filed with the county clerk. This procedure was followed because the order made by the magistrate on October 11, 1940, holding Perona and Carston to answer had been endorsed on the original complaint in accordance with the provisions of section 872 of the Penal Code, and the complaint then forwarded to the county clerk for filing. Appellant was at all times represented by counsel, and no objection was made against proceeding with the examination without having the original

complaint in court; the testimony was reported, afterwards transcribed and filed; the order committing appellant for trial as filed with the county clerk was valid in form, and the offense charged in the information was the same offense for which he had been committed for trial and as shown by the reporter's transcript. In that state of the record the trial court was justified in denying appellant's motion to set aside the information. As held in the following cases, an information is not based on the complaint filed with the magistrate, but upon the order of commitment made by him (*People* v. *Gregory,* 8 Cal. App. 738 [97 Pac. 912] ; *People* v. *Lee Look,* 143 Cal. 216 [76 Pac. 1028] ; *People* v. *Hinshaw, supra*) ; and the fact that the order is not endorsed on the complaint itself does not serve as ground for setting aside the information (*People* v. *Tarbox,* 115 Cal. 57 [46 Pac. 896]). █ Nor are we able to agree with appellant's contention that the magistrate lost jurisdiction to hold the examination when the original complaint was forwarded to and filed with the county clerk. If no complaint at all has been filed before the magistrate, he is doubtless without jurisdiction to proceed; but where as here a legal complaint has been duly and regularly filed charging a public offense, and the magistrate hears the evidence, holds the defendant to answer for trial, and a valid commitment is issued, the accused is "legally committed by a magistrate" within the meaning of section 995 of the Penal Code. (*People* v. *Dal Porto,* 17 Cal. App. (2d) 755, at p. 765 [62 Pac. (2d) 1061, 63 Pac. (2d) 1199] ; *People* v. *Malowitz,* 133 Cal. App. 250 [24 Pac. (2d) 177].) The most that could be said here is that there was an irregularity in conducting the examination; and as stated in *People* v. *Malowitz, supra,* "In each of the cases of *People* v. *Van Horn,* 119 Cal. 323 [51 Pac. 538], and *In re Mazuran,* 57 Cal. App. 411 [207 Pac. 509], the principle of law is clearly announced that any irregularity in conducting the preliminary examination of a defendant which does not affect his substantial rights in the premises furnishes no ground for setting aside an information . . . " In the present case it is apparent that the absence of the original complaint at the time the examination was held did not affect any of appellant's substantial rights.

█ Appellant contends that the provisions of section 954 of the Penal Code do not authorize the consolidation of

separate informations against different defendants, even though the charges therein relate to the same circumstances, citing *People* v. *Foward,* 134 Cal. App. 723 [26 Pac. (2d) 532], and *People* v. *O'Connor,* 81 Cal. App. 506 [254 Pac. 630]. Conceding that to be true, it has been definitely held in more recent cases that an error committed in this regard is not jurisdictional; that it is one of procedure, and that therefore before it becomes ground for reversal it must appear that the consolidation has resulted in prejudice to some substantial right of the accused. (*People* v. *Aguinaldo,* 3 Cal. App. (2d) 254 [39 Pac. (2d) 505] ; *People* v. *Shepherd,* 14 Cal. App. (2d) 513 [58 Pac. (2d) 970].) Here appellant makes no attempt whatever to point out wherein the consolidation of the informations operated to his prejudice, nor in reviewing the record on appeal has any reason been found which would justify such conclusion; furthermore, the factual situation here is the same as the one presented in the Aguinaldo case; therefore the decision in that case sustaining the conviction is directly in point.

On the day of trial the court expressed the opinion that in consummation of the order of consolidation the district attorney should file an amended consolidated information, and this was done. These proceedings took place after the jury had been selected but before it was sworn; and upon the filing of the consolidated information the court stated: " . . . I take it, it is not necessary to . . . arraign them again . . . "; thereupon, and without objection on the part of appellant the court proceeded with the trial. Appellant now contends that because he was not re-arraigned the trial was illegal. We disagree with this contention. The consolidated information was simply a combination of the two separate informations theretofore filed against appellant and Perona. The charge of robbery made therein was in language identical with that set forth in the separate informations; and the allegations of the prior convictions were exactly the same as those made in the separate informations filed against appellant. Upon those separate informations appellant and Perona had been duly arraigned and entered their pleas of not guilty, and at that time appellant admitted the prior convictions; and that appellant acquiesced to the view expressed by the court that the arraignment of the defendants under the separate informations was legally sufficient for all

purposes of the trial is demonstrated by the fact that no objection was made in his behalf against proceeding with the trial. Furthermore, the record shows that the trial proceeded upon that understanding because, in conformity with statutory requirement, the clerk of the court stated to the jury after it had been sworn that the defendants had entered pleas of not guilty to the charge of robbery; and the district attorney made no effort whatever to introduce any evidence as to the prior convictions; nor did he allude thereto, in any manner, until the defendant took the witness stand in his own defense, and thereby opened the way for the district attorney to ask appellant on cross-examination whether he had been previously convicted of a felony. Moreover, it is our conclusion that in any event the order of consolidation was sufficient without the filing thereafter of an amended consolidated information, and that therefore re-arraignment under the consolidated information would have amounted to nothing more than an idle act.

It appearing, therefore, that none of the assignments of error constitutes grounds for reversal, the judgment of conviction and the order denying the motion for new trial are affirmed.

Peters, P. J., and Ward, J., concurred.