EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS BETANCOURT, acusado y apelante.

Núm. 11126.—*Sometido:* Marzo 7, 1946. *Resuelto:* Mayo 20, 1946.

*Santos P. Amadeo* y *Gilberto Concepción de Gracia,* abogados del apelante; *Hon. Procurador General E. Campos del Toro, Luis Negrón Fernández, Primer Procurador General Auxiliar* y *J. Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Luis Betancourt, Víctor Miranda y Vicente Salamán fueron acusados del delito de robo, porque "ilegal, voluntaria

y maliciosamente se apoderaron criminalmente de una cartera conteniendo la suma de $10 y otros documentos de valor, perteneciente a y de la propiedad de Nicolás Pedrosa Montañez, sustrayendo dicha cartera de la persona del referido Nicolás Pedrosa, en su inmediata presencia, contra la voluntad del mismo, y por medio de la violencia e intimidación''. Betancourt fué juzgado por separado y apela de la sentencia de seis años de presidio que le fué impuesta.

■ Como primer señalamiento se alega que el veredicto es contrario a derecho: (a) porque el fiscal no alegó ni probó que entre el acusado apelante y los otros dos coacusados hubiera comunidad de un propósito ilegal (*community of unlawful purpose*) cuando se cometió el delito; y (b) porque el fiscal no alegó ni probó que el uso de la fuerza por el apelante fué con el propósito de robar.

El artículo 238 del Código Penal define el delito de robo como ''el acto de apoderarse criminalmente de bienes muebles pertenecientes a otro, ya sustrayéndolos de su persona, ya en su inmediata presencia y contra su voluntad, por medio de la violencia o de la intimidación''. La acusación en el presente caso se ajusta al lenguaje del estatuto y alega todos los elementos necesarios para constituir el delito de robo. El fiscal no estaba obligado a alegar ni a probar la existencia de un plan preconcebido y premeditado por y entre los tres acusados para cometer el robo. Lo único que estaba obligado a probar era la participación que tomara el acusado Betancourt en el acto criminal de apoderarse de la cartera y dinero de Pedrosa, sustrayéndolo de la persona de éste, en contra de su voluntad y por medio de la violencia. *People* v. *Thomas,* 113 P.2d 706, 709.

■ Probado el acto ilegal cometido en contra de la persona y la propiedad de Pedrosa, y conectado el acusado con la comisión del mismo, la ley presume que el acto fué realizado con intención criminal y era al acusado a quien incumbía presentar evidencia de la cual pudiera surgir una

duda razonable en cuanto a la existencia de esa intención o propósito criminal. 22 C.J.S., sección 34, pág. 92; *People* v. *Harris,* 29 Cal. 679; *People* v. *Bushton,* 80 Cal. 160, 162; *People* v. *Boling,* 83 Cal. 380, 382; *People* v. *Ah Gee Yung,* 86 Cal. 144, 147; *People* v. *Johnson,* 106 Cal. 289; *People* v. *McGlade,* 139 Cal. 66; artículo 12, Código Penal de Puerto Rico; *Pueblo* v. *Giraud,* 23 D.P.R. 531; *Pueblo* v. *Juliá et al.,* 25 D.P.R. 284; *Pueblo* v. *Brau,* 27 D.P.R. 779.

■ Cuando, como en el caso de robo, la intención específica no es un elemento del delito, no es necesario alegar ni probar intención específica alguna. *State* v. *Howard,* 111 So. 72, 162 La. 719.

■ En el segundo señalamiento se alega que el veredicto es contrario a la prueba.

La evidencia considerada en conjunto es contradictoria. Declaró Pedrosa que la noche de autos, cuando él se dirigía a su trabajo en los muelles, al bajarse de la guagua se encontró con los tres acusados parados en la Parada 4; que los tres acusados se le fueron detrás y uno de ellos le dió y lo achocaron; que conoce a los acusados de vista y no de nombre; que el que le dió el golpe fué Betancourt, a quien reconoce; que al recibir el golpe no supo más del mundo; que cuando despertó en los almacenes de la A.D.A. los acusados lo tenían en el suelo, dos sujetándolo y el otro sacándole el dinero de la cartera; que cuando los otros dos lo registraban, Betancourt, el acusado, lo sujetaba; que la cartera contenía $10 y la tarjeta de inscripción; que entre él y Betancourt no se cruzaron ningunas palabras antes de que éste le diera el golpe.

Angel Manuel Betancourt, hermano del acusado, admitió que fué el acusado el que dió el golpe a Pedrosa; y declaró que los otros dos acusados arrastraron a Pedrosa hasta un zaguán; pero que el acusado no entró al zaguán. Al ser confrontado con su declaración anterior el testigo admitió

que su hermano también había cargado a Pedrosa hasta llevarlo al zaguán y que allí los otros dos lo registraron.

El testigo Isidro Lligas Torres declaró que fué el acusado el que le dió el golpe a Pedrosa; que Pedrosa cayó en la carretera; que entonces el acusado Miranda, conocido por "Contentito" le dió en el suelo "y entre los tres lo metieron en el ranchón", llevándolo cargado porque estaba achocado; que los tres eran el "Indio" Vicente Salamán, "Contentito" y Olivo; que entre ésos no estaba Betancourt.

Julio Olivo declaró que vió cuando Betancourt le dió con el puño a Pedrosa; que éste cayó y vino "Contentito" y le cayó a patadas en el piso; que entre el acusado Betancourt y los otros dos cargaron a Pedrosa hasta el zaguán; que el acusado salió para afuera y los otros dos se quedaron registrándolo y entonces oyó la voz de "Contentito" que decía: "Yo tengo la cartera pero está vacía"; que Betancourt no intervino en el registro.

La declaración del acusado tendía a demostrar que él le pegó a Pedrosa porque éste le habló mal de su madre; que después que Pedrosa cayó, los otros dos acusados fueron quienes lo cargaron, lo condujeron al zaguán y allí lo registraron; que él no ayudó a cargar a Pedrosa ni tampoco a registrarlo.

El jurado resolvió el conflicto dando crédito a la declaración de Pedrosa, corroborada por la de los demás testigos en cuanto a que el acusado tomó parte en cargar a Pedrosa hasta el sitio en donde sus dos compañeros le registraron y le quitaron el dinero. Siendo la prueba creída por el jurado suficiente para sostener la acusación, es nuestro deber respetar el veredicto y la sentencia.

Al contrainterrogar al acusado, el fiscal le hizo la siguiente pregunta: "¿Aquí se usa ese sistema de pedir un cigarrillo o candela para atracar?" Se opuso la defensa, sin exponer fundamento alguno para su oposición. La corte permitió la pregunta y el acusado la contestó diciendo: "Yo

no pedí cigarrillos.'' La defensa no anotó una excepción, no pidió la eliminación de la pregunta, ni tampoco solicitó de la corte que instruyera al jurado que no debía tomarla en consideración. Evidentemente el abogado defensor no le dió al incidente la importancia que ahora pretende dársele en apelación.

La pregunta formulada por el fiscal estaba justificada por la prueba. El hermano del acusado declaró que cuando llegaron al sitio del suceso su hermano, el acusado, ''se dirigió donde Pedrosa y le pidió un cigarrillo y él le habló malo y mi hermano le dió un puño y el hombre se cayó''. El propio acusado declaró que le pidió candela a Pedrosa. No creemos que la pregunta pudiera causar perjuicio alguno a los derechos del acusado. El caso de *El Pueblo* v. *Marchand Paz*, 53 D.P.R. 671, presentaba una situación enteramente distinta a la del presente. Allí el perjuicio a los derechos sustanciales del acusado era tan evidente, que no dudamos un momento en revocar la sentencia y ordenar un nuevo juicio.

No podemos decir que la corte sentenciadora al imponer una pena de seis años de presidio abusara de su discreción, toda vez que el delito de robo es penable con reclusión en presidio por un término mínimo de un año y máximo de veinte. Art. 240, Código Penal.

*La sentencia recurrida debe ser confirmada.*