Argued July 6, affirmed September 20, 1927.

## STATE *v.* S. E. WALLER ET AL.

(259 Pac. 424.)

**Intoxicating Liquors—Evidence Held to Sustain Conviction for Possessing Still and Still Worm Without Being Registered.**

1. In prosecution for possessing a still and still worm without having the same registered with the county clerk, evidence *held* sufficient to justify conviction.

**Intoxicating Liquors—Defendant Possessing Still and Still Worm must Establish Due Registration.**

2. On finding defendant's possession of still and still worm, the burden of proof was on him to establish its due registration with the county clerk.

---

Intoxicating Liquors, 33 C. J., p. 758, n. 80, p. 786, n. 44, p. 790, n. 22 New.

From Clackamas: J. U. CAMPBELL, Judge.

Department 1.

The defendant Waller was jointly indicted with Mack Holloman by the grand jury of Clackamas County for the offense of possessing a still and still worm without having the same registered with the county clerk. Holloman pleaded guilty and the defendant Waller was tried separately. The jury returned a verdict of guilty and a judgment thereon being rendered against him, he appeals to this court.

AFFIRMED.

For appellant there was a brief and oral argument
by *Mr. Charles T. Sievers.*

For respondent there was a brief and oral argu-
ment by *Mr. Livy Stipp,* District Attorney.

McBRIDE, J.—There is but one question raised on
this appeal and that is: There is no evidence to jus-
tify the verdict. We cannot agree with this conten-
tion.

In brief, here is an outline of the state's evidence:
Holloman lives on a side road in a canyon about 300
yards or so from the main Mt. Hood road. There is
an old sawdust pile about 250 yards from his home
where a mill had formerly been located. About two
weeks before the arrest of defendants Waller and
Holloman, Deputy Sheriffs Thompson and Duncan
had located some mash, suitable for making liquor,
buried in the sawdust with a rubber tube protruding
so that it attracted their attention and caused them
to search and find the mash. The deputies, or one
or the other of them, did not make known the dis-
covery of the mash until the night of the arrest when
Waller in his car, with a boy driving, drove up to the
Holloman house just after dark. Shortly after, the
deputies, who were concealed near the sawdust pile,
heard a noise which they took to be a tank or drum,
like the one hereafter alluded to, apparently rolled
from the car. Thereafter, Holloman's boy appeared
carrying a piece of piping, which the state claims to
have been adapted to serve the purpose of a worm
for a still, and went to the place where the mash
was and, while he was "tinkering" as the witness
Thompson says, defendants Waller and Holloman ap-
peared walking down the hill together, Holloman car-

rying the drum which was evidently intended as the container for the proposed still. There was no light and all were very silent. After they had worked about fifteen or twenty minutes, the deputies closed in on the party and found substantially the following changed condition of things which had not existed at 3 o'clock in the afternoon when they made the first inspection: A dugout or trench into the bank (this had been observed at the previous inspection), a pile of wood a little longer than ordinary stovewood had been deposited near the dugout, and a piece of an old stove laid across the dugout near the upper end. The tank or container which had a hole cut or drilled in one end was lying partly on the piece of stove and the other end upon the earth at the upper end of the dugout. A trough and copper pipe were lying on a log about two and one-half feet from the dugout and a funnel alongside of them on the ground. Near by was a box with cleats nailed across it with the neck of a bottle inserted into the box between the cleats. The bottom of the bottle had been removed and the bottle itself filled with charcoal. There was a bucket and strainer near the mash, also a shovel, ax and hammer. The sawdust had been dug away from the mash.

When the defendants were arrested, Waller was standing with an unlighted flashlight in his hand at a place where two barrels of mash had been dug out and a plank laid from the sawdust pile to the creek, and when the deputies threw their flashlight upon them, as detailed by witness Duncan, Holloman was down by the mash and Waller was standing by his side. Waller asked Duncan who he was, and flashed his electric torch upon him and seemed to recognize him. Duncan then searched Waller's car and found

a gunny-sack on the seat blackened as if by stove blacking or soot. He also found another gunny-sack near the dugout in the same condition and said that it looked like blacking off of the can or container. Waller's residence is about 18 miles from where Holloman resides.

1, 2. In this state of the case, we are not concerned with the denials or explanations made by the defendant. The sole question is, Was there any substantial evidence connecting defendant Waller with the offense? Whether the articles found on the ground constituted a crude still, suitable for the distillation of intoxicating malt, was purely a question for the jury, not requiring expert testimony, and we think any man of common sense would, with these facts before him, say that these defendants were there for the purpose of distilling malt into the more convenient and profitable form of moonshine whisky, and that they were preparing so to do with the copper pipe, the iron tank, and the charcoal filter, using the piece of old stove and the dugout as a furnace in which, by the aid of the wood collected, they might cook and, distill the mixture. If Waller did not bring the container and pipe to the premises, which seems very probable, it is evident that he was there participating in the act of the other two. It is sufficient to say that his explanation of what otherwise would appear to be a plain case assisting in the operation of a still and being one of the parties possessing a still has no place here. We are not called upon to compare and weigh the evidence for or against him, but to determine whether there is any evidence that he is implicated in the maintaining and possession of the still, and this fact having been found in favor of the state,

the burden of proof was upon him to establish its due registration, which, of course, he made no attempt to do.

The judgment is affirmed.                    AFFIRMED.

RAND, C. J., and COSHOW, J., concur.