[Crim. No. 1495. Third Appellate District.—December 2, 1936.]

THE PEOPLE, Respondent, v. JOE DAL PORTO, Appellant.

Levinsky & Jones for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant, together with one Eugene Ghilarducci and one Victor Genovali, was convicted on an

information filed by the district attorney of the county of Stanislaus, on the 14th day of November, 1935, charging the defendants with conspiracy to possess and operate a still for the distillation and production of alcoholic liquors, without the same being then and there registered with the state board of equalization, and upon which no license therefor had been obtained or was applied for from the state board of equalization, etc. Count 2 charges the same defendants with conspiracy to possess and operate a still, without the same being registered or licensed. The information further charges that the defendants proceeded to equip and operate the still in the county of Stanislaus, etc. After conviction the defendant made a motion in arrest of judgment, which was denied, and judgment being pronounced, the defendant appeals to this court therefrom and from the denial of his motion in arrest of judgment.

The record shows that on the night of September 27, 1935, liquor control officers found a still in a barn on property belonging to one Ghilarducci, near Knight's Ferry in Stanislaus County.

Upon this appeal the defendant urges first, the insufficiency of the preliminary examination to set forth any evidence showing, or indicating the offense for which he was tried; and that the defendant's motion to set aside the information on the grounds that the preliminary examination did not show the commission of any offense charged in the information should have been granted.

It appears that the defendant was committed on the charge of possessing a still. Section 872 of the Penal Code provides that a defendant shall be committed after examination if it appears that a public offense has been committed, and further provides that the committing magistrate shall make an order, signed by him, to the effect that it appears that the offense within the complaint mentioned (or any offense, according to the fact; stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the person named in the complaint to be guilty thereof, etc.

Section 809 of the Penal Code authorizes the district attorney to file an information against ·a defendant charging the defendant with any offense shown by the testimony taken before the officer conducting the preliminary exami-

nation, the contention of the appellant in this case being that the order holding the defendant for trial did not describe the offense as a conspiracy to possess a still or to operate a still.

Section 809, *supra,* is slightly broader in its scope than section 872, *supra,* for which an abundant reason exists. Ordinarily, the committing magistrate is not a person learned in the law, and it is evident that the purpose· of the legislature was not to confine the district attorney to the definitions and limitations of the offense or offenses shown to have been committed by the defendant, through the preliminary examination, to the definitions of the offense as set forth by the committing magistrate. Whether the testimony taken at the preliminary examination was sufficient to show probable cause for the existence of a conspiracy to commit a crime, is a question only to be raised by *habeas corpus* proceedings, and cannot be raised by motion to set aside an information. Subdivision 7 of section 1487 of the Penal Code, after setting forth grounds for discharging one after preliminary examination reads: ''Where a party has been committed on a criminal charge, without reasonable or probable cause.''

In the case of *People* v. *Creeks,* 170 Cal. 368 [149 Pac. 821], the Supreme Court of this state, in deciding the question as to whether one had been committed without probable cause, which, of course, included the question of whether the preliminary examination showed the commission of any criminal offense, used the following language: ''By reason of an express statutory provision so declaring (Pen. Code, sec. 1487, subd. 7), such an objection may be raised upon *habeas corpus,* if timely made, and we know of no other way in which it can be raised. It is not included in. the grounds specified in the statute for the setting aside of an information.''

To the same effect is the case of *People* v. *Campos,* 10 Cal. App. (2d) 310 [52 Pac. (2d) 251]. See, also, the case of *People* v. *Mitsunaga,* 91 Cal. App. 298 [266 Pac. 1020].

Not having raised the objection in the manner authorized by the Penal Code, it is too late now to urge the same upon appeal.

It is next urged that there is no direct testimony establishing the crime of conspiracy. This crime is defined

in section 182 of the Penal Code. However, the law is well settled that the crime of conspiracy need not be established by direct evidence, but may be established by the circumstances surrounding the alleged conspiracy.

As stated in the case of *People* v. *Gregory,* 12 Cal. App. (2d) 7 [54 Pac. (2d) 770]: "It may be stated, however, that the existence of a conspiracy need not be proved by direct evidence that the parties actually met together and agreed to undertake the performance of an unlawful act." (Citing, *People* v. *Schmidt,* 33 Cal. App. 426 [165 Pac. 555] ; *People* v. *Correa,* 44 Cal. App. 634 [186 Pac. 1055].) In *People* v. *Correa, supra,* the court said: "As a general rule a conspiracy can only be established by circumstances, and all these bearing in any way upon the fact of a conspiracy, or upon the acts done in pursuance thereof, may be shown to prove the fact of a conspiracy, and to show the intent or motive of a defendant, for a crime involved in the commission of an overt act in furtherance and execution of a conspiracy." (Citing a number of authorities.)

Section 4 of the Alcoholic Beverage Control Act, Statutes of 1935, page 1123, reads: "On and after July 1, 1935, every still located within the limits of this State must be registered with the board. Every person owning or possessing a still who fails to register the same, as herein required, or fails to obtain a license issued in pursuance of the provisions of this act authorizing the ownership and possession of such still, shall be guilty of a felony," etc.

While there is no direct evidence that the still involved in this action was unregistered, the law is pretty well settled in other states, and we think the same rule should be held to prevail here, that the question of whether a still has been registered, and that the defendant holds a license to operate the same, is a matter of defense, even though the information or indictment must charge the fact of the still being unregistered and no license issued. In addition to this, the circumstances which we are about to relate, as shown by the transcript, establish beyond all reasonable doubt that the still involved in this action was unregistered and none of the defendants was licensed to operate the same.

The testimony also establishes almost beyond controversy, when taken as a whole, that the appellant was justly convicted. The defendant Ghilarducci was shown to have been

the owner of the property where the still was located. When the premises were raided, the still was found in a barn concealed by a false front of hay or a screen of hay. The sides of the barn had been papered in such a manner as to exclude the light, and also to exclude the fact of a light in the barn being visible from the outside.

When the appellant was arrested he told the officers of his accompanying an unidentified man by the name of "John", to make purchases, which were shown by the evidence at the trial to be as follows: The investigating officers found a complete still set up in the barn, concealed behind a false front of hay. At the still were two 4000-gallon vats nearly full of sugar mash, which was then boiling. There were some seventy sacks of sugar and eleven full sacks of sugar; forty-five gallon cans; a certain motor and pump was found at the still, being articles purchased from one Thomas who was in the hardware business at Stockton. Thomas testified as follows: "Mr. Dal Porto and I think two other gentlemen came in and gave me a little idea of what they wanted. I got the motor and the pump, and told them how I could mount it up so that it would be satisfactory to them, and we decided on a price, and I gave the shop orders to put it together." A 4000-gallon redwood tank or vat bearing the name of "Stockton Lumber Company", was found at the still. One Ernest Muzio testified that he was an estimater for the Stockton Lumber Company; that Dal Porto called at the lumber-yard with another man and stated that the gentleman wanted to buy a tank; that the sale was made to the 'latter, who did not wish to give his name, so the tank was charged to Dal Porto, who stated that it was all right to charge the tank to him. At the same time there was purchased a bundle of laths and a roll of paper. As we have said, the inside of the barn where the still was concealed was sealed with building-paper held in place by laths. At the still was found a "Wood Wizzard" motor and a number of fire-bricks. In a conversation with witness Sutherland, Dal Porto stated that he was with a person named "John", who purchased a "Wood Wizzard" motor and about six hundred fire-bricks. At the still, yeast papers and cartons were found bearing the "Peerless Yeast" brands. A witness by the name of Willett testified that Dal Porto purchased from the Muzio Bakery in Stockton,

during the month of September, two orders of Peerless yeast, each being for two hundred pounds. He paid for the yeast himself. A third order for two hundred pounds ordered by a person not identified, was canceled by Dal Porto on September 28, 1935, the morning following the seizure of the still. In conversation with a witness by the name of Smith, Dal Porto stated that he was buying the yeast for the person by the name of "John", and that he had bought $96 worth of yeast during the three days from September 23d to September 25th, and that on the date of the seizure he was notified by John that he (John) would not need any yeast that day. In conversation with a witness by the name of McDonald, Dal Porto stated that he felt sure that all of these things were purchased for a still.

The evidence further shows that the appellant's car was used to transport one of the motors purchased; also, to transport the yeast which was delivered by the appellant to John, some place near Stockton.

We agree with counsel for the People that the foregoing evidence found in the transcript is sufficient to justify a verdict that the appellant aided and abetted another in the possession of a still. At the same time we agree with counsel for the appellant that redwood tanks may be and are used for the storage of water, and the water so stored intended for and used in the irrigation of orchards, gardens and alfalfa land. We also agree with counsel for the appellant that pumps are used for the purpose of conveying water to such tanks for storage purposes, but we have yet to be advised that hundreds of pounds of yeast are necessary for the irrigation of either gardens, orchards or alfalfa lands. Such large quantities of yeast bought and paid for by the defendant and delivered to the man named "John", whose other name the appellant was unable to disclose, is sufficient of itself to establish the guilt of the appellant. Furthermore, the $96, the purchase price of the yeast, was paid for by the appellant. While delivery was made to the unknown man named "John", there is nothing in the record indicating that John advanced any portion of the $96. The fact that the defendant was expending that sum of money for a quantity of yeast which could not be used for any reasonable purpose other than connected with the tank, pump and machinery purchased by John, stands out as a piece of testi-

mony sufficient to show that the appellant was a participant in the conduct of the illegal business. No jury could reasonably come to any other conclusion.

The respondent also calls our attention to the fact that the appellant did not take the stand in his own behalf to explain any of the circumstances herein set forth.

Again, it may be asked why was the pump and the yeast loaded in the appellant's car and taken to a point outside of the city of Stockton and there transferred to a car operated by a man named ''John''? It it were a registered and licensed still, it is certain that no such subterfuges would have been practiced. People doing a legitimate business are not usually seeking ways and means of disguising all of their transactions. The old story of somebody else being the guilty party comes up with exceeding frequency, but it is seldom sufficient to mislead any fair-minded jury. In this connection the respondent calls our attention to the case of *People* v. *Borrego,* 211 Cal. 759 [297 Pac. 17], where only a component part consisting of connected pieces of pipe fitted perfectly into the still, was held to show that the defendant was aiding and abetting in the operation of an illegal still. In that case we also find the following (quoting from the syllabus) : ''And defendant's connection with the crime of possession of a still may be shown by positive proof or by circumstantial evidence which excludes every other reasonable hypothesis except that of guilt.'' As we have said, no other reasonable conclusion could have been reached by the jury in the case now under consideration.

What we have set forth herein, however, establishes clearly that the still involved in this action was unregistered and no license for the operation thereof had been issued. However, the cases where this question has arisen have so far as we have been able to ascertain, held that the question of registration and the issuance of a license constituted matters of defense, and that the burden rests upon the defendant to show such license or registration.

In *State* v. *Cox,* 117 Or. 204 [243 Pac. 77], the Supreme Court of Oregon, having under consideration a prosecution for the possession of a still, held that while it was necessary for the People to allege the possession and operation of an unlicensed still, all it was necessary to show was the possession of the still, and that the burden of showing that it was

registered or licensed rested upon the defendant. The language there used is as follows: "A case against a defendant for keeping or having in his possession an unregistered still is analogous in many particulars to the old Liquor License Laws. In prosecutions for violation of such laws it was always necessary to allege the failure of the defendant to procure a license before he sold the liquor, but when it came to the proof, the State had only to prove the sale, the burden of proof then being on the defendant to produce his license. So here it was necessary to allege that the defendant kept and had in his possession a still and worm, whereupon the burden of proof would shift to him to produce his certificate of registration."

In *McKee* v. *State*, 37 Okl. Cr. 73 [256 Pac. 522], the criminal court of appeals of Oklahoma held that in prosecutions for unlawfully possessing a still the defendant must show he had a legal authority to possess and operate the same.

The statute in Oregon relative to possession of a still reads as follows: "No person shall keep in his possession any worm, or still in any county in this State without having first registered the same, together with a description of the particular premises where it is kept," etc. To the same effect are the cases of *State* v. *Waller*, 122 Or. 404 [259 Pac. 424]; *Harris* v. *Commonwealth*, 161 Va. 1028 [170 S. E. 717]; *Moore* v. *State*, 154 Ark. 13 [240 S. W. 1083]; *Rosslot* v. *State*, 162 Ark. 340 [258 S. W. 348]; *Sanford* v. *State*, 198 Ind. 198 [152 N. E. 814]; *Giacolone* v. *United States*, 13 Fed. (2d) 108. A similar case is that of *McCurry* v. *United States*, 281 Fed. 532, where the defendant was prosecuted for setting up and operating a still without registering the same and giving a bond as required by the United States Statutes. The court held that the burden of proving the registration and the giving of the bond devolved upon the defendant and that an instruction to such effect was proper. This case was commented upon in the case of *Rossi* v. *United States*, 289 U. S. 89 [53 Sup. Ct. 532, 77 L. Ed. 1051], the court using the following language: "The general principle, and we think the correct one underlying the foregoing decisions is that it is not incumbent upon the prosecution to adduce positive evidence to support a negative averment, the truth of which is fairly indicated by established circumstances, and which, if untrue, could be readily disproved by

the production of documents or other evidence properly in the defendant's possession or control.''

We do not need to cite any of the long list of authorities holding that in prosecutions for the unlawful sale of liquor, the burden of proof is upon the defendant to show that he is duly authorized to make such sales by having in his possession the necessary license.

We think the authorities which we have cited support the following statement, to wit: The operation of a still in the state of California is a special privilege, and not a right, and therefore, one exercising such privilege has the burden of establishing that he has the legal right so to do.

 It is further contended that the court committed prejudicial error in permitting the prosecution to read to the jury an extrajudicial statement made by the defendant Ghilarducci. The court limited the statement as evidence against the maker thereof, and likewise instructed the jury that it could only be considered for such purposes, and that it could not be considered as testimony against either Dal Porto or against the defendant Genovali. The statement in one or two places identified the two other defendants as being present at the barn where the still was being operated. If we admit that the portion of the statement made by the defendant where reference is made to the appellant in this action, should have been excluded, it does not follow that the error of the court necessitates a reversal. Section 4½ of article VI of the Constitution is explicit in providing that no reversal shall be had unless the error complained of resulted in a miscarriage of justice. That there has been no miscarriage of justice in this case is so apparent that further consideration of the objections urged by the appellant seem unnecessary. However, we may cite the following cases to the effect that where two persons are jointly charged with a crime, and it is brought to the attention of the court in an appropriate legal manner that certain evidence or declarations made by one of them would be used at the trial, error is not committed in denying a separate trial: *People* v. *Perry,* 195 Cal. 623 [234 Pac. 890] ; *People* v. *Dowell,* 204 Cal. 109 [266 Pac. 807] ; *People* v. *Remington,* 74 Cal. App. 371 [240 Pac. 526] ; *People* v. *Roderick,* 118 Cal. App. 547 [5 Pac. (2d) 463].

While the numerous points made and the vigorous argument of appellant in urging a reversal of the judgment in this cause has entailed a somewhat lengthy investigation, we have been unable to find any tenable grounds upon which such a conclusion could rest.

The order and judgment are affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 17, 1936, and the following opinion then rendered thereon:

THE COURT.—The appellant, by his petition for rehearing herein, urged upon the court the contention that he was illegally informed against, tried and convicted of the crime of conspiracy; that no conspiracy was shown by the testimony taken at the preliminary hearing; and that the appellant was held on the charge of possession of the still alone; and that the commitment was upon the charge of possession alone.

Under the provisions of section 995 of the Penal Code a motion may be made to set aside an information on the ground "that before the filing thereof the defendant had not been legally committed by a magistrate".

The following excerpt from the case of *People* v. *Malowitz,* 133 Cal. App. 250, [24 Pac. (2d) 177], defines what is meant by "illegally committed": "It is contended that the defendants had not been legally committed because the evidence before the magistrate did not show that a public offense had been committed. If the magistrate had no power or jurisdiction to hold the examination, if no complaint had been made charging the defendants with a public offense, and perhaps if no evidence at all was taken by the magistrate, and there was no waiver by the defendants, it might be held that the defendants had not been legally committed. (*People* v. *Howard,* 111 Cal. 655 [44 Pac. 342].) The phrase 'legally committed' refers to the examination of the charge and holding the defendant to answer by the magistrate. (*Ex parte Baker,* 88 Cal. 84 [25 Pac. 966].) If a magistrate, upon a complaint duly made and charging a public offense, has heard the evidence and has committed

the defendant, that ends the matter so far as concerns this motion. The question here is not, as upon *habeas corpus*, whether a person is illegally deprived of his liberty, but whether he can legally be tried upon a criminal charge. . . . The right to have a charge dismissed is regulated by statute, and, as we have seen, the phrase 'legally committed' means only that the accused has been committed by a magistrate who has jurisdiction to hold the examination, and who has actually heard the evidence and determined that probable cause exists for holding the defendant.''

Section 809 of the Penal Code authorizes the district attorney to charge a defendant, when filing an information, with any offense shown by the testimony taken at the preliminary examination. An examination of the testimony taken at the preliminary examination which is set out in the transcript shows that the testimony there taken is substantially the same and almost identical with the testimony given upon the trial of the action, and we think establishes the offense of conspiracy beyond controversy. As pointed out in our opinion in this case, conspiracy may be shown by circumstances and does not need to be established by what is called direct testimony.

The petition for a rehearing herein is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1936.